IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRIAN KEITH HENRICKS,       §
      §
      *Petitioner*,       §
      §
v.       §       CIVIL ACTION No. H-13-0976
      §
WILLIAM STEPHENS,       §
      §
      *Respondent*.       §

**MEMORANDUM OPINION AND ORDER**

Petitioner, Brian Keith Henricks,[1] a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and fifty-year sentence for murder. Respondent filed a motion for summary judgment (Docket Entry No. 13), to which petitioner filed a response (Docket Entry No. 16).[2]

Based on careful consideration of the pleadings, the motion, the response, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons that follow.

---

[1] Petitioner's middle name is inconsistently spelled "Kieth" and "Keith" in the state court records. The Texas Department of Criminal Justice reflects the spelling as "Keith."

[2] Petitioner's response was prepared by another inmate, who signed the response. Inmates are not allowed to sign pleadings on behalf of other inmates, as they are not licensed attorneys and cannot represent other inmates. *See* FED. R. CIV. P. 11(a). The Court here admonishes the non-litigant inmate that he may not sign pleadings as another inmate's "legal assistant."

# I.  BACKGROUND AND CLAIMS

Petitioner was convicted of the murder of his stepfather and sentenced to fifty years' incarceration on March 6, 2007.  The conviction was affirmed on appeal in 2009.  The Texas Court of Criminal Appeals refused discretionary review in 2010, and denied petitioner's application for state habeas relief in 2013.

Petitioner filed the instant federal habeas petition on March 25, 2013, raising the following thirty-five claims for relief, as grouped by respondent:

1.      Trial counsel was ineffective in

      (a)      failing to investigate the case;

      (b)      failing to seek out and interview witnesses;

      (c)      failing to interview co-defendant;

      (d)      failing to investigate the State's blood spatter expert and obtain a defense blood spatter expert prior to trial;

      (e)      failing to investigate the State's ballistics expert and obtain a defense ballistics expert;

      (f)      failing to obtain medical/criminal records showing decedent's prior assaults of co-defendant and his criminal history;

      (g)      failing to request a lesser included charge for voluntary manslaughter and criminally negligent homicide, as well as an instruction on the defense of necessity;

      (h)      allowing co-defendant's attorney to invoke his client's Fifth Amendment privilege in the presence of the jury;

      (i)      failing to have the State make a pretrial election as to which indictment paragraph it would rely on at trial;

2

      (j)     failing to object to a witness characterizing the incident as a murder;

      (k)     failing to call petitioner in response to co-defendant's invocation of her Fifth Amendment rights;

      (l)     failing to properly object to the prosecutor's use of petitioner's post-arrest silence;

      (m)     failing to present evidence of petitioner's state of mind;

      (n)     failing to object to the prosecutor's personal opinion that petitioner purposely sought out a witness to testify to petitioner's version of the facts;

      (o)     failing to obtain a witness's medical records to impeach his testimony as to his mental capacity;

      (p)     failing to object to the prosecutor's use of her personal opinion regarding appropriate punishment;

      (q)     opening the door to use of character evidence against petitioner; and

      (r)     failing to properly present mitigating evidence during the punishment phase of trial.

2.    Petitioner is actually innocent because he received ineffective assistance of counsel at trial and the State lied to the jury.

3.    The evidence was insufficient to prove murder because petitioner acted in self defense and had no specific intent to cause the death of decedent.

4.    The trial court erred in

      (a)     permitting a detective to comment on petitioner's invocation of the right to counsel and right to remain silent and to insinuate that petitioner admitted guilt and was trying to negotiate a plea bargain;

      (b)     admitting evidence of petitioner's character;

      (c)     failing to exclude evidence withheld during discovery;

(d)    failing to grant a motion for continuance;

(e)    allowing the State to stage an in-court demonstration of the murder because it was speculative;

(f)    adding a deadly weapon finding to the judgment; and

(g)    denying defense counsel's objection to the credibility of a medical expert witness.

5.    The State engaged in prosecutorial error when it

(a)    violated the discovery order by withholding information about blood-spatter evidence; and

(b)    violated *Brady* by failing to disclose material exculpatory evidence, namely, a receipt showing that decedent purchased several alcoholic drinks the night of the murder.

6.    Appellate counsel was ineffective in failing to raise certain issues on appeal.

Respondent argues that one or more of these claims are procedurally barred, and that all of the claims are without merit.  The Court will address the merits of each of petitioner's claims.

## II.   FACTUAL BACKGROUND

In its opinion affirming petitioner's conviction, the intermediate state court of appeals set forth the following statement of facts:

Henricks lived with his mother Diane Marie MacBird and her husband Robert MacBird.  They got into an altercation on the night of December 4, 2005. Henricks shot Robert four times, killing him.  Robert also suffered from blunt force trauma to his head.  Henricks and Diane took Robert's body and dumped it in the national forest area, off Calvary Road in Montgomery County.  The next day, Diane and Henricks met with attorney Jerald Crow, who arranged a meeting with the police at his office.  The police arrived at Crow's office and

interviewed Diane.  Henricks then took the officers to where they had dumped the body and showed the police where he had put the gun that he used to shoot Robert.

Henricks was charged with Robert's murder.  Henricks pleaded not guilty and proceeded to a jury trial.  The jury found Henricks guilty and sentenced him to fifty years confinement in the Texas Department of Criminal Justice, Institutional Division.

*Henricks v. State*, 293 S.W.3d 267, 270–271 (Tex. App.– Eastland 2009, pet. ref'd).

## III.   THE APPLICABLE LEGAL STANDARDS

A.   <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U .S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Harrington v. Richter*, ___U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

6

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

7

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner alleges that his trial counsel, Kelly W. Case, was ineffective in nineteen instances. In rejecting petitioner's claims of ineffective assistance of trial counsel, the state

trial court made the following general findings of fact and conclusions of law on collateral

review:

1.     The applicant was charged by indictment with the felony offense of
       murder.  The applicant entered a plea of not guilty.  A jury found the
       applicant guilty and assessed punishment at imprisonment for 50 years.

2.     On April 12, 2011, the applicant filed his first application for a writ of
       habeas corpus, alleging thirty-five grounds for relief, including
       ineffective assistance of trial counsel and ineffective assistance of
       appellate counsel.

3.     This Court designated issues to be resolved on April 28, 2011, directing
       the applicant's trial counsel, Kelly Case, to respond by affidavit to the
       applicant's allegations of ineffective assistance of counsel.  Case
       responded by affidavit on June 15, 2011.

                          *     *     *     *

5.     The applicant's mother and co-defendant, Diane MacBird, was
       represented by William 'Bill' Pattillo.  Pattillo was instructed to
       respond by affidavit in the April 28, 2011 order, but did not file his
       affidavit until August 30, 2012.

6.     The Court is familiar with the effective performance of the applicant's
       attorneys, who have long practiced in the courts of Montgomery County
       and are qualified for appointment as counsel in serious felony cases.

*Ex parte Henricks*, pp. 502–03.

9.     The applicant failed to prove by a preponderance of the evidence that
       he was denied his right to the effective assistance of counsel at trial.
       He failed to prove that his counsel's actions were not the result of
       sound trial strategy, or that the result of the proceeding could be
       materially different absent his counsel's decisions.

*Id.*, p. 507 (citations omitted).  The Texas Court of Criminal Appeals expressly relied on the

state trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

A.    Failure to investigate

Petitioner contends that trial counsel failed to investigate the case thoroughly or prepare a proper defense.

In responding to petitioner's assertion that trial counsel did not discuss defense strategy with petitioner, trial counsel submitted an affidavit on state collateral review, testifying as follows:

> Counsel did discuss self-defense with the applicant throughout the course of my representation of the defendant and numerous hours spent going over the case and the evidence with the defendant.  Counsel and applicant agreed that both self-defense and defense of a third person carried the greatest possibility for a successful not guilty verdict, because that is what the evidence and witness interviews indicated to be the truth.  Both the defendant and counsel agreed that this case was a case of self-defense and defense of a third person.

*Ex parte Henricks*, p. 476.

In responding to the state trial court's inquiry as to whether counsel conducted an investigation into the viability of the applicant's claim of self-defense, trial counsel testified as follows:

> This was our entire defense and theory behind this case.  Hundreds of hours were spent developing this evidence and our presentation to the jury including interviewing witnesses, reviewing numerous photographic exhibits, and physical evidence removed from the trailer where this crime occurred as well as enhancing numerous photographs that we believed proved that this was in self defense such as blowing up the defendant's booking photo to show the massive swelling and bruising around his face and photographs in the home that appeared to be blood from the defendant's mouth spattered on the wall of the trailer from being hit with the murder weapon, the crow bar.  Additionally, cross examination questions were prepared for the State's witnesses that would lead the jury to believe that the State did a poor investigation and did not type the blood evidence so it was inconclusive as to whose blood they were

10

showing in photographs since they could not tell if blood spattered on the walls and ceiling was the defendant's or the decedent's. The entire defense trial was choreographed with this as the backbone theory of the case with all of the evidence that was developed leading to this conclusion.

*Id.*, pp. 470–71.

In responding to the state trial court's inquiry as to whether counsel investigated or attempted to discover "first-aggressor evidence" regarding the decedent, trial counsel testified as follows:

This was a major part of the defense theory of the case. Testimony and photographs were introduced at trial, specifically, the photograph of the broken squirrel statue and attempts to cross examine several of the witnesses about whether they ever visited Robert MacBird at home so as to be familiar with his drinking pattern and propensity for aggressiveness when drinking. Additionally, there was a receipt found in Robert MacBird's pants by defense counsel during the evidence review at Montgomery County CSI, which indicated that MacBird had bought a 24 case of beer on the night he was killed. The prosecutor removed this evidence and hid it by asking her investigator to remove it from the courtroom and actually take it out before defense counsel could introduce it. Counsel approached the judge and demanded that this evidence be brought to court, however, the judge refused to order the prosecutor to do so, claiming that it was 'their evidence' and they could take it out if they wanted to, or something similar. Defense counsel argued that it was exculpatory and *Brady* and should be returned to the courtroom as part of the body of evidence in the case at trial, but the judge did not rule accordingly.

*Id.*, p. 468. Counsel also addressed his investigation of petitioner's own criminal record, as shown by the following:

Counsel requested discovery of this issue from the prosecutor and had hearings both on and off the record, regarding obtaining this information from the District Attorney's Office. Even though ordered to do so, the prosecutor did not disclose this information. Additionally, the criminal history that was run by the defense was inconclusive which was the reason that I requested the original NCIC printout [from] the District Attorney's Office. Also, the

11

defendant was asked about his criminal history as a check against the records that I had, but he could not provide information. He claimed that he did not remember if [he] was on probation, convicted or it was just dismissed. Even though I knew he had previous charges out of Illinois, I could not ever determine if these were final or not, and the defendant could not assist me. My advice to him was that if he had any convictions and he decided to testify, there was a chance that those convictions could be brought out in testimony and be put before the jury during the guilt innocence phase.

*Id.*, pp. 472–73.

In denying petitioner's claim that trial counsel failed to investigate or prepare a proper defense, the state trial court made the following relevant findings of fact:

> 7. Case conducted a thorough investigation of the applicant's case and decided to present self-defense as the primary defensive theory.

*   *   *   *

> 22. Case and the applicant discussed the viability of self-defense as a defensive theory, and both agreed that it presented the applicant with the best chance of obtaining a favorable outcome.

*Ex parte Henricks*, pp. 503–04. The Texas Court of Criminal Appeals expressly relied on the trial court's findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner also complains that trial counsel failed to interview Detectives Rogers and Landrum and the State's pathologist, Dr. Patricia Moore, prior to trial. In addressing these issues on collateral review, trial counsel testified in his affidavit that he discussed the case with Detective Rogers and Detective Landrum regarding their roles in the case and the evidence they collected, as well as statements made by petitioner when he was interviewed. Counsel stated that he interviewed Moore on numerous occasions during trial preparation,

and investigated her education, training and experience.  *Ex parte Henricks*, pp. 461–62.

Counsel further testified that,

> Counsel did interview the relevant experts designated by the State in its
> Supplemental Discovery Response dated February 7, 2007, and February 8,
> 2007.   Specifically, counsel had numerous conversations [with] Patricia
> Moore, O.D., the medical examiner, as well as conducting an independent
> investigation into [her] education, training, and employment history as well as
> testimony in other cases and affidavits submitted by her in other cases.
> Counsel also met with, and investigated, C. Rossi, the lead investigator
> assigned to this case by the Montgomery County Sheriff's Office.  Counsel
> cannot say exactly what the substance of the specific conversations was, since
> too much time has elapsed.  I cannot remember the substance of every
> conversation I had from four (4) years ago.

*Id.*, p. 461.  Counsel further stated that,

> Counsel considered and did challenge Dr. Moore's qualifications.  Counsel
> examined Dr. Moore about her fraudulent and false claims to the Medical
> Board that she was not working, when in fact she was, in violation of her
> license.   It was counsel's belief that Dr. Moore was ineligible to practice
> medicine in the State of Texas based on this and counsel attempted to pursuade
> the court, but was unsuccessful.  Counsel also challenged Dr. Moore's
> conclusions as being those of the police without being independently verified,
> by her autopsy.  In fact, during the trial, counsel was able to get Dr. Moore to
> admit that she had, in the past, changed autopsies based on police requests,
> when she at first stated she never did such a thing and the record of her
> affidavit was admitted into evidence based on this.

*Id.*, p. 467.

In rejecting petitioner's claim, the state trial court found that trial counsel "viewed the

scene of the crime and investigated the qualifications of the State's experts."  *Id.*, p. 503.

A state court's factual findings must be presumed to be correct unless the petitioner

carries "the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

A petitioner claiming inadequate investigation by trial counsel must show with probative evidence what such investigation would have uncovered and how his defense would have thereby benefitted. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Under *Strickland* a petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate. *Wilkerson*, 950 F.2d at 1065. In the present case, petitioner fails to show and present probative evidence that counsel did not properly investigate and how further investigation would have aided his cause. *See Smith v. Maggio*, 696 F.2d 365, 367 (5th Cir. 1983) (holding counsel not deficient for failing to investigate when investigation was, in fact, conducted). His conclusory and unsupported allegations of inadequate investigation and prejudice are insufficient to raise a genuine issue of material fact precluding summary judgment. Petitioner fails to meet his burden of proof under AEDPA.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*

14

or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

The remaining specific facts underlying petitioner's claims of failure to investigate are covered in his other ineffective assistance claims below, and will be discussed therein to avoid unnecessary repetition.

B.     Failure to locate and present witnesses

Petitioner complains that trial counsel did not seek out and interview crime-related witnesses.  In responding to this claim on collateral review, trial counsel testified in his affidavit as follows:

> Counsel did investigate both the scene where the crime occurred and the location of the deceased's body where it was located in the forest.  Counsel viewed the scene of the crime and attempted to locate additional witnesses that lived nearby.  Counsel also attempted to locate witnesses that were provided by the defendant.  Counsel, while at the scene, reviewed the scene itself, the location of relevant location marker[s] and did a 'walk through' of the description of the scene.  Unfortunately, this was a very transient community and no additional witnesses could be found that had relevant information.  Additionally, the description provided for in the offense reports, of the sequence of events and the description of the crime itself provided by the defendant in his confession to law and law enforcement, were all consistent, allowing counsel to easily compare and find the location where the gun was hidden as well as the location where the body was hidden after MacBird was killed.

*Ex parte Henricks*, p. 460.   Trial counsel further testified that he conducted an evidentiary review of all available crime scene evidence at the Montgomery Sheriff's Office. *Id*., p. 461. Regarding petitioner's allegation that counsel did not contact all available witnesses, trial counsel testified that:

Other than family members, counsel was not provided the names and contact information for additional witnesses from the defendant.  The defendant did *describe* potential witnesses to counsel and counsel attempted to locate witnesses based on the defendant's description and location, but was largely unsuccessful.  Counsel did walk through and around the location of the crime scene to discover additional witnesses but was unsuccessful at locating any additional witnesses due to the transient nature of the neighborhood and the fact that the defendant lived a relatively isolated lifestyle, where he did not work and did not have access to means of transportation.  Witnesses that were located were Allen Srack, Lance Johnson, Brandon Evans, Richard Sykes, Joe Cooper, Sam Campbell, Chuck Crnkovic, Elaine Hightower. and John Red.

*Id.*, p. 462 (original emphasis).   Trial counsel testified to the following additional

investigations of potential witnesses:

Other witnesses were interviewed, and were shown photos of the decedent in an attempt to locate anyone that was familiar with his lifestyle and actions while he was at home, other than the defendants.  At the Diamond Shamrock in Willis, where the decedent was supposed to frequent, according to the defendant, the decedent's photograph was shown to the manager of the store but the manager did not recognize him.  An employee at the Stowaway Marina Bar and Grill was also shown the photograph of the decedent, but he did not recognize him either.  The defendant told counsel that MacBird was frequently going to this bar and would become intoxicated while there.  This turned out to be false.  Two people sitting at the Sunshine Bait Shop were shown the photo of the decedent and asked if they recognized him.  They did not.  Also, employees at the Exxon convenience store where the decedent supposedly purchased alcohol were interviewed but they did not remember him at all. While the defendant did describe witnesses to counsel and counsel attempted to locate those witnesses based on the defendant's description and location, these attempts were wholly unsuccessful.  Counsel did personally walk through and around the location of the crime scene to discover additional witnesses, but was unsuccessful at locating any additional witnesses due to the transient nature of the neighborhood and the fact that the defendant lived a relatively isolated lifestyle, where he did not work and did not have access to transportation.  Witnesses that were located were Allen Srack, Lance Johnson, Brandon Evans, Richard Sykes, Joe Cooper, Sam Campbell, Chuck Crnkovic. Additionally, the defendant asked us to track down a person known to him as

16

'Hogan,' who frequented the area.  Several attempts were made to locate anyone whose name or nickname was 'Hogan,' but we were unsuccessful.

*Id.*, p. 465.

To the extent petitioner complains that trial counsel called only his grandmother as a witness at punishment, neither deficient performance nor prejudice are shown in the record. In responding to this claim on collateral review, trial counsel testified in his affidavit as follows:

> Counsel did contact Susan Kanoby, the defendant's aunt who lived in Florida and Vivienne Fallon, the defendant's grandmother who lived in Illinois, in an effort to determine whether they had relevant knowledge of this case, pursuant to a request by the defendant.  Counsel was told by the defendant that they knew about the case, and were familiar with the events.  Based on that assertion, trial counsel had telephone conversations with both of these witnesses prior to and personal conversations with these witnesses during the trial.  However, neither of them could provide any evidence for which they had personal knowledge that a jury would consider relevant or that the judge might allow in evidence, subject to a hearsay exception.  Both of these witnesses had only hearsay knowledge of the events that they obtained through either the defendant telling them about it or the defendant's mother's description to them, of the events on the phone.  Neither one had any direct knowledge of this case, nor of anything relevant to the parties after the defendant moved to Texas, which was several years before the crime occurred.  From my investigation, they were nothing more than character witnesses and could provide no useful information in this case, except possibly for mitigation purposes.

> *    *    *    *

> Counsel interviewed the defendant's 2 aunts and his grandmother.  None of these witnesses had any personal knowledge of the events as they lived out of state and were not present nor had they ever visited the defendant and his mother in Texas.  Ms. Fallon resided in Illinois and had not seen the defendant and his mother for several years.  Ms. Kanoby lived in Florida and had not talked to, nor seen, the defendant or his mother for several years.  However,

17

they were aware of the defendant's past criminal history to a limited extent. Unfortunately, during my interview with Susan Kanoby it became clear that the defendant was not honest with her about his criminal past and I could not call her as a witness for fear that his previous untruthful statements to her and therefore his criminal history would be heard by the jury during the guilt-innocence portion of the trial.  Because of the defendant's criminal history, I refused to call them as character witnesses to possibly open the door to allow in proof of bad character through his previous convictions and charges.  Ms. Kanoby and Ms. Fallon had no knowledge, other than hearsay of the events of this crime and were not personally acquainted with any knowledge regarding the defendant and his mother, other than being able to provide a history of events years before this crime occurred.  The defendant's grandmother, Vivienne Fallon, did take the stand during the punishment phase to tell what little she knew about the situation and to provide mitigation testimony, as much as she could.  She was the only witness, in my opinion that could talk to the jury and possibly provide them with relevant information and convince them about any mitigating circumstances.

*Id.*, p. 462–64.

In rejecting this particular claim, the trial court made the following findings of fact:

10.   Case interviewed members of the applicant's family and considered whether their testimony would be beneficial to the applicant.

\* \* \* \*

21.   Case contacted members of the applicant's family and had them available to testify at punishment.  Case chose to present only the applicant's grandmother's testimony because the testimony of the applicant's aunts would have been cumulative and they were less sympathetic witnesses than the grandmother.

*Id.*, p. 503–04.  The trial court also made the following conclusion of law:

23.   Case was not ineffective for choosing to present only the applicant's grandmother's testimony during the punishment phase of trial.  As the testimony of the applicant's aunts was merely cumulative of the grandmother's testimony, Case made a valid strategic choice as to the nature of his presentation.

18

*Id.*, p. 509.   The Texas Court of Criminal Appeals relied on the trial court's findings and

conclusion in denying habeas relief.  *Id.*, at cover.

Petitioner additionally complained that trial counsel failed to call Jerald Crow as a

witness.  In addressing this issue on state habeas, trial counsel testified in his affidavit as

follows:

> Counsel did interview Mr. Crow about conversations with the defendant and
> his mother concerning this crime.  Mr. Crow told me that the defendant's
> mother was being struck by Robert MacBird and the defendant attempted to
> stop the beating his mother was suffering at the hands of MacBird.  Mr. Crow
> told me that the defendant had been struck in the head with a crow bar, and
> shot Robert MacBird several times as MacBird was approaching him with the
> crow bar and immediately after being struck with the crow bar.  Mr. Crow told
> me that the defendant admitted to shooting MacBird.  Mr. Crow told me that
> after the defendant killed MacBird, the defendant and his mother 'panicked'
> and dumped the body in the national forest.  Mr. Crow also told me that he had
> allowed the police to interview both the defendant and his mother in his office.
> Mr. Crow told me that the defendant and his mother took the police out to the
> scene where they dumped the body, but because it was dark when the body
> was dumped in the forest, they had difficulty locating the body.  Mr. Crow told
> me that after the shooting, the defendant then hid the weapon behind a tree and
> later, assisted the police with locating the weapon and the body.
>
> Counsel did not call Jerald Crow to the stand because I anticipated that the
> prosecutor would have questioned him about the defendant's admissions made
> to Mr. Crow.  Specifically, that the State would have been able to obtain
> testimony from Mr. Crow that the defendant killed Robert MacBird, dumped
> his body in the National Forest and then attempted to hide the murder weapon,
> all of which were admissions of guilt or indicative of guilt.  Even though our
> theory of the case was self-defense, these admissions heard by the jury, would
> have been damaging.

*Id.*, pp. 473–74.

19

In rejecting petitioner's claims regarding Crow, the trial court made the following relevant finding of fact and conclusion of law:

> 19.    Case did not call Jerald Crow to the stand for fear that the applicant's admissions to Crow would be used against the applicant.
>
> *    *    *    *
>
> 21.    The applicant has not demonstrated that Jerald Crow's testimony would have affected the outcome of the proceeding.  Case was therefore not ineffective for failing to call Crow to the stand.

*Id.*, pp. 504, 508 (citations omitted).   The Texas Court of Criminal Appeals relied on the state trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have stated are largely speculative.  *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001).   "[T]he presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."  *Id.*  A petitioner seeking to show ineffective assistance of counsel must therefore "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Here, petitioner fails to present affidavits from any omitted witnesses or otherwise establish with probative evidence the anticipated testimony of an omitted witness and show that the witness would have testified at trial.  Moreover, he fails to show that trial counsel's

decision to call only the grandmother at punishment was not a reasonable trial strategy. Petitioner's conclusory and unsupported allegations of omitted witnesses are insufficient to raise a genuine issue of material fact precluding summary judgment. Petitioner fails to meet his burden of proof under AEDPA.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

C.    Failure to interview co-defendant

Petitioner complains that trial counsel failed to interview his co-defendant, Diane MacBird.

In responding to this claim, trial counsel stated in his affidavit that he "discussed interviewing Diane MacBird with William Pat[t]illo, her lawyer," but that "Mr. Pat[t]illo declined to allow counsel to interview [her]." *Ex parte Henricks*, p. 465. In his own affidavit, Pattillo testified that Diane MacBird had been found incompetent to stand trial, and that she had spent considerable time in a state hospital being treated for paranoid delusions. *Id*., pp. 492–93. Pattillo was of the opinion that it would not have been in Diane MacBird's best interest to allow her to take the stand. *Id*. According to Pattillo, Diane MacBird had never wanted to testify in petitioner's behalf after Pattillo advised her of the potential consequences of testifying. *Id*., p. 493.

21

In denying habeas relief, the state trial court found that trial counsel had attempted to interview Diane MacBird, but was prevented from doing so by Pattillo, her counsel. *Id.*, p. 503. The state trial court made a conclusion of law holding that trial counsel was not ineffective in failing to interview Diane MacBird, because her counsel prevented her from answering trial counsel's questions. *Id.*, p. 507. The Texas Court of Criminal Appeals relied on the state trial court's findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner does not present any probative evidence showing that trial counsel was able, but declined, to interview Diane MacBird, and he fails to establish deficient performance under *Strickland* or to meet his burden of proof under AEDPA.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

D.    <u>Blood spatter experts</u>

Petitioner claims that trial counsel failed to investigate the State's blood spatter expert or obtain a defense blood spatter expert prior to trial.

In responding to these claims on collateral review, trial counsel testified in his affidavit as follows:

> I did not conduct an investigation into the qualifications of the State's blood spatter expert. I did not conduct an investigation into the underlying data relied upon by the State's blood spatter expert. The State did not disclose that C. Rossi was an expert in blood spatter, nor did the state disclose the existence

22

of her report, photographs or underlying data supporting those results, in violation of the court's discovery order. It could not have reasonably been anticipated that the State would rely on blood spatter evidence until all of this was disclosed at trial, because the State never disclosed the existence of a body of evidence, including photographs, reports and diagrams made by C. Rossi and which were obtained during the investigation of this case.

*    *    *    *

Counsel reviewed the evidence that was collected in this case at the 'CSI Office' of the Montgomery County Sheriff's Office. However, not all of the evidence and exhibits gathered by the State were disclosed to the defense counsel at these evidence reviews. While counsel has familiarity with blood spatter evidence, [its] introduction and use and objections to be raised, in this case, counsel could not have reasonably foreseen that this type of expert or testimony would be used since at no time during the discovery process and investigation of the case, did the State ever disclose the existence of this evidence. Counsel's previous experience with the investigation and use of blood spatter evidence is through previous cases in which this type of evidence was used as well as attending numerous criminal legal seminars in which this type of evidence was taught and discussed.

My strategy during trial was to show that C. Rossi did not have the necessary experience to be making the conclusions that the State relied upon in its case in chief.

*Ex parte Henricks*, p. 457–58. Counsel stated that, despite numerous court hearings and orders regarding the State's disclosure and compliance with discovery, the State did not disclose the blood spatter evidence and report by C. Rossi. *Id.*, p. 476.

In explaining why he did not hire a blood spatter defense expert until after trial had commenced, counsel testified as follows:

Lou Akin was hired immediately upon the State's disclosure at trial of the existence of the body of evidence regarding blood spatter and C. Rossi's reports on that evidence at trial. As stated [above], the existence of C. Rossi's report, several photographs and her underlying conclusions were never made

available to the defense by the State.  Once counsel learned that the State had withheld this evidence and the fact that Rossi was going to testify as a blood spatter expert, immediate steps were taken to secure an expert for the defense. This occurred during the trial.

After contacting Mr. Akin to determine his availability and researching his qualifications, counsel requested the appropriate funding by the court since [petitioner] was declared indigent, requiring appointed counsel and experts. Counsel met with Mr. Akin and reviewed the State's case as well as the photographic evidence that was disclosed prior to trial on the evening of March 1, 2007.  Counsel also had Mr. Akin sit at counsel table with counsel and the defendant, on March 2, 2007, in order to assist counsel with the direct examination of C. Rossi, recalled to the stand by the defense.

* * * *

As stated [above], blood spatter evidence was not disclosed to defense counsel nor was the resume, training nor the report and photographs developed for use by C. Rossi, ever disclosed to the defense.  Other than previous experience with this type of evidence, counsel did not review or prepare for blood spatter evidence in this case until after the start of trial, when the evidence was finally disclosed by the State.

*Id*., pp. 459–461.

In denying habeas relief, the state trial court made the following relevant findings of

fact:

8.    Case, despite having notice from the State that blood spatter evidence would be introduced, waited until trial began to approach an expert on blood spatter.

9.    Lou Akin, the defense's blood spatter expert, appeared for trial and presented testimony critiquing the State's blood spatter evidence.

* * * *

12.   Case viewed the scene of the crime and investigated the qualifications of the State's experts.

24

*Ex parte Henricks*, p. 503.

The state trial court further made the following relevant conclusion of law:

10.    Case was not ineffective for hiring Akin as an expert after trial had commenced, because the applicant has not proven that had Akin been given more time to prepare, his testimony would have been materially different.

*Id.*, p. 507 (citation omitted). The Texas Court of Criminal Appeals relied on the state trial court's findings and conclusions in denying habeas relief. *Id.*, at cover.

Petitioner contends that, had Akin been given more time, his expert testimony would have been materially different and the jury would not have convicted him. However, in his affidavit submitted to the state trial court on collateral review, Akin stated that, at the time defense counsel asked him to be an expert witness,

The case was already in trial and over the next two days I analyzed the case as quickly as possible and concluded that there were serious flaws in the prosecution's expert's analysis. I consulted with defense counsel about my analysis but there was not adequate time to properly coach defense counsel on how to cross examine the state's expert so that the serious error in her analysis of the blood stains in that case could be made clear to the jury. Furthermore, I did not have time to prepare demonstrations needed to properly present my findings to the jury.

*Ex parte Henricks*, p. 79.  Petitioner presents no probative evidence that Akin's expert testimony or opinion would have been materially different from what was presented at trial. It perhaps might have been presented in a different manner, but Akin does not state that his expert opinion would have materially changed, given more time.  Although petitioner also

argues that trial counsel could have utilized Akin as a ballistics expert, he fails to present any probative evidence that Akin would have qualified as a ballistics expert for trial purposes.

Moreover, petitioner does not identify any material evidence that would have been revealed had trial counsel undertaken additional investigation of Rossi, or how it would have been beneficial to the defense. *See Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). No ineffective assistance of counsel is shown.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

E.    Ballistics experts

Petitioner claims that trial counsel failed to investigate the State's ballistics expert or obtain a defense ballistics expert.

In responding to these claims, trial counsel testified in his affidavit as follows:

> Counsel hired Sridhar Natarajan, M.D., to review and assess the State's evidence with regard to ballistics. Dr. Natarajan is a forensic medical examiner with experience in all areas of forensic autopsies including the interpretation and analysis of ballistics evidence and testimony. Dr. Natarajan testified for the defense.

*Ex parte Henricks*, p. 459. Trial counsel additionally testified that he consulted with and hired both Dr. Natarajan and Louis Akin and that there were numerous consultations with them both as to the nature, location, extent, and possible scenarios of how the crime occurred

and the descriptions provided by the defendant as compared to the ballistics evidence and autopsy of Robert MacBird.  Counsel stated that Dr. Natarajan was extensively consulted prior to and during trial and testified during trial, while Louis Akin was consulted during trial and testified at trial.  *Id*., p. 467.

In denying habeas relief on collateral review, the state trial court made the following finding of fact and conclusion of law:

> 12.    Case reviewed the scene of the crime and investigated the qualifications of the State's experts.

*    *    *    *

> 9.    The applicant failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel at trial. He failed to prove that his counsel's actions were not the result of sound trial strategy, or that the result of the proceeding could be materially different absent his counsel's decisions.

*Id*., pp. 503, 507 (citations omitted).  The Texas Court of Criminal Appeals relied on the state trial court's findings and conclusions in denying habeas relief.  *Id*., at cover.

Petitioner presents no probative evidence of any further investigation trial counsel should have undertaken as to the State's ballistics expert, nor does he identify any material or beneficial evidence that would have been revealed by such further investigation. Petitioner fails to demonstrate deficient performance.  Moreover, petitioner does not show that, but for counsel's failure to undertake such further investigation, there is a reasonable probability that the result of the trial would have been different, and he fails to demonstrate

27

prejudice.   No ineffective assistance of trial counsel is shown as to petitioner's claim for failure to investigate.

The record shows that trial counsel obtained and presented an expert for purposes of ballistics evidence at trial.  Petitioner presents no probative evidence that a different ballistics expert was available and willing to testify for the defense at trial, and fails to show, by affidavit or otherwise, the nature of such expert's testimony and how it would have benefited the defense.   Petitioner's conclusory allegations are speculative and unsupported in the record, and fail to raise a genuine issue of material fact sufficient to preclude the granting of summary judgment.   Nor does he establish that, but for trial counsel's failure to retain and present such expert at trial, there is a reasonable probability that the result of the trial would have been different.   To the extent petitioner complains that trial counsel should have obtained a ballistics expert earlier than he did, petitioner does not show that, had counsel obtained the expert earlier, there is a reasonable probability that the result of the trial would have been different.

The state court denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

F.     Impeachment of the decedent

Petitioner claims that trial counsel was ineffective in failing to obtain medical and/or

criminal records to establish decedent's criminal history and prior assaults of co-defendant.

In addressing this issue on state collateral review, trial counsel testified in his affidavit

as follows:

> Counsel did obtain Diane MacBird's medical records from Conroe Regional
> Medical Center during the relevant period. There was one record from Conroe
> Regional, which described conditions of minor bruising and no injuries
> resulting. Additionally, Diane MacBird did not tell the treating personnel that
> her bruising occurred from abuse, but rather that she had fallen. Since there
> was no pattern to her bruising or more than one incident, the records were not
> helpful to our claim of a pattern and history of abuse. There was nothing
> remarkable about the one record of Diane MacBird going to the hospital.

*Id*., p. 466. As to the decedent's criminal history records, trial counsel testified that:

> Counsel did obtain Robert MacBird's criminal history. Robert MacBird was
> convicted of the following: Speeding 4-30-1992, Speeding in a School Zone
> 9-10-1999, Speeding, and No Motor Vehicle Liability Insurance on 9-14-2001.
> Counsel did not attempt to introduce [this history] because it was irrelevant,
> in counsel's opinion.

*Id*., p. 468.

In rejecting petitioner's claims on collateral review, the state trial court made the

following relevant finding and conclusions:

> 11.     Case sought out and found records relating to the applicant's mother's
> medical history and the victim, Robert MacBird's, criminal history.
>
> *     *     *     *
>
> 14.     The applicant has not proven that any information contained in Diane's
> medical record would have been beneficial to his case. Consequently,

29

> Case was not ineffective for deciding not to present those records to the
> jury.
>
> 15.  The applicant has not proven that any information contained in Robert's
>      criminal history would have been beneficial to his case.  Case was not
>      ineffective for failing to present that information to the jury.

*Id.*, pp. 503, 507.  The Texas Court of Criminal Appeals relied on the state trial court's

findings and conclusions in denying habeas relief.  *Id.*, at cover.

 Petitioner presents no probative evidence that other medical records existed for Diane

MacBird, or that other medical records would have been admissible to establish that she had

been assaulted by the decedent.  Nor does he show that the one hospital visit record for Diane

MacBird that counsel did not use would have demonstrated an assault, particularly in light

of counsel's testimony that the medical record recorded Diane MacBird's statement that she

sustained her injuries from a fall.  Petitioner does not rebut the strong presumption that

counsel's actions were sound trial strategy.

 Nor does petitioner present probative evidence that the deceased had a criminal history

other than that found by trial counsel, and that the other convictions would have been

admissible.  Petitioner fails to establish that, but for counsel's alleged errors, there is a

reasonable probability that the result of the trial would have been different.  Petitioner again

fails to rebut the strong presumption that counsel's actions were sound trial strategy.

 The state court denied relief on these claims.  Petitioner fails to show that the state

court's determination was contrary to, or involved an unreasonable application of, *Strickland*

or was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment dismissal of these claims.

      G.    <u>Jury charge and instructions</u>

Petitioner next alleges that trial counsel should have requested a lesser included charge for voluntary manslaughter and criminally negligent homicide, as well as an instruction on the defense of necessity.

In his responsive affidavit, trial counsel testified as follows:

> Counsel discussed the jury charge with the defendant. I explained that I did not think that they had proven their case and I believed that the self defense and defense of third party instructions were clear and proven in court. I did not want the jury to go with a lesser-included crime or one that carried a less culpable mental state because I thought that the State had not proven its case and I did not want the jury to be able to convict on a lesser charge when the State could not prove murder. The defendant agreed with me that if they could not prove murder, then we didn't want to give the jury the possibility of convicting [him] of anything else. We were wrong. Counsel did not request an instruction on 'necessity' because typically juries do not agree nor will they vote for the necessity defense. I did not believe this was something that would help us given the facts of this case, specifically, the defendant and his mother dragging the deceased out into the woods in the National Forest and leaving his body there, in an attempt to cover up the crime.

*Ex parte Henricks*, p. 469.

In rejecting petitioner's claim on collateral review, the state trial court made the following findings of fact and conclusions of law:

> 15.    Case did not seek a jury instruction on the lesser-included offenses of criminally negligent homicide or manslaughter. Nor did he seek a jury instruction on necessity.

*Id*. p. 503.

16.     The applicant was not entitled to lesser-included instructions after he
        relied on self-defense as a defensive theory.  Thus, Case did not err in
        failing to request those instructions.

17.     The applicant was not entitled to an instruction on the defense of
        necessity.  Case was not ineffective for failing to request such an
        instruction.

*Id.*, pp. 507–8 (citations omitted).  The Texas Court of Criminal Appeals relied on the state

trial court's findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

The question of whether a defendant is entitled to a lesser-included offense charge in

a non-capital murder case is one arising solely under state law.  Under Texas state law, a

defendant is entitled to a requested lesser-included offense charge only if "the evidence of

the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty

only of that offense, and not the greater offense."  *Rousseau v. State*, 855 S.W.2d 666, 673

(Tex. Crim. App. 1993).  This Court is bound by the state trial court's determination that

petitioner was not entitled to a lesser-included offense under state law because he had

asserted self defense.  "[I]t is not the province of a federal habeas court to reexamine state-

court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67–68

(1991); *Charles v. Thaler*, 629 F.3d 494, 500–01 (5th Cir. 2011) ("Under § 2254, federal

habeas courts sit to review state court misapplications of federal law. A federal court lacks

authority to rule that a state court incorrectly interpreted its own law. When, as here, a state

court's legal conclusions are affirmed by the highest court in that state, those conclusions are

state law.").  Simply put, a federal habeas court does "not sit as a 'super' state supreme court"

to review alleged errors of state law. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986); *see also Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Consequently, trial counsel was not ineffective in failing to request a lesser-included jury charge, as the state court found that petitioner was not entitled to the charge under state law.

For these same reasons, trial counsel was not ineffective in failing to request an instruction on the defense of necessity, as the state court found that state law did not entitle petitioner to such an instruction.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

H.    Fifth Amendment

Petitioner contends that trial counsel was deficient in allowing co-defendant's attorney to invoke his client's Fifth Amendment privilege in the presence of the jury. The record shows that trial counsel called Diane MacBird to the stand and that she, through her counsel, invoked her Fifth Amendment privilege.

In responding to this claim on collateral review, trial counsel testified in his affidavit that he called Diane MacBird to testify "because she was the only other person that was present at the scene. She was an eye-witness to the event." *Id.*, p. 466. Counsel further testified that:

> Counsel did not know that Diane MacBird would assert her Fifth Amendment
> Right and refuse to testify.   Counsel did ask William Pat[t]illo whether
> MacBird would be willing to testify on several occasions prior to trial.   Mr.
> Pat[t]illo's response was that he was not sure if she would testify or not,
> because of her constantly changing and rapidly deteriorating mental state.

*Id*.  Counsel stated that he "was not aware that Diane MacBird would assert the Fifth

Amendment." *Id*.

In denying habeas relief under this claim, the state trial court made the following

relevant finding of fact and conclusion of law:

> 14.   Case did not have any foreknowledge that Diane would invoke her
> Fifth Amendment rights on the stand.

*Ex parte Henricks*, p. 503.

> 12.   Case was not ineffective for calling Diane to the stand at trial, as he was
> unaware of whether she intended to invoke her Fifth Amendment rights.

*Id*., p. 507 (citation omitted).  The Texas Court of Criminal Appeals relied on the state

court's findings and conclusions in denying habeas relief.  *Id*., at cover.

When a witness has a valid Fifth Amendment privilege, it is generally error under

state law for the prosecution to call the witness knowing that the witness will assert the Fifth

Amendment privilege.  *Coffey v. State*, 796 S.W.2d 175, 177 n. 4 (Tex. Crim. App. 1990).

Although a defendant has the right to call a co-defendant as a witness, he may not do so if

the witness exercises his or her Fifth Amendment privilege against testifying.  *Bridge v.*

*State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986).  However, it is well established that a

defendant has no right to require a witness to invoke his or her Fifth Amendment privilege

34

in front of the jury. *Ellis v. State*, 683 S.W.2d 379, 382 (Tex. Crim. App. 1984). It is improper to allow defense counsel to call a co-defendant if counsel knows that the co-defendant intends to invoke his or her Fifth Amendment rights. *Mendoza v. State*, 552 S.W.2d 444, 450 (Tex. Crim. App. 1977).

In the instant case, petitioner presents no probative evidence establishing that trial counsel knew prior to calling Diane MacBird as a witness that she would invoke her Fifth Amendment rights. No deficient performance is shown. Morever, petitioner does not establish that, but for counsel's alleged error in calling his co-defendant to the stand, there is a reasonable probability that the result of the trial would have been different. Petitioner's conjecture and conclusory assertions are unsupported in the record and are insufficient to raise a genuine issue of material fact precluding summary judgment or to meet his burden of proof under AEDPA.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

I.    Pretrial election

Petitioner asserts that trial counsel was ineffective in not having the State make a timely pretrial election as to which indictment paragraph it would rely on at trial.

In addressing this claim on collateral review, trial counsel testified in his affidavit that he had no strategic reason for waiting until the close of the State's case-in-chief to move for the election.  Indeed, counsel stated that he had erred.  *Id.*, p. 469.

The state trial court, however, found that trial counsel had not erred.  In denying petitioner's claim, the state trial court made the following relevant finding of fact and conclusion of law:

> 16.     Case moved the Court to require the State to elect the paragraph of the indictment it intended to proceed upon at the end of the State's case-in-chief.  This Court denied his request.

*Id.*, p. 504.

> 18.     Case correctly moved for an election by the State at the close of the State's evidence.  That this Court denied Case's motion does not mean that Case rendered ineffective assistance.

*Id.*, p. 508 (citation omitted).  The Texas Court of Criminal Appeals relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

The question of whether trial counsel timely moved for the State to make its election is one arising under state law.  The state court found that trial counsel correctly moved for an election by the State at the close of the State's evidence.  As before, this Court is bound by the state court's determinations of state law; consequently, the Court is bound by the state court's finding that trial counsel correctly moved for the election under state law.  Petitioner does not establish that, had counsel moved for a pretrial election, it would have constituted reversible error for the trial court to deny the motion.  Nor does petitioner establish that, but

36

for counsel's failure to move for an election prior to trial, there is a reasonable probability that the result of the trial would have been different.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

J.    Witness's characterization of crime scene

Petitioner asserts that trial counsel should have objected to witness John Peterson's characterizing the incident as "a murder" during the guilt-innocence phase of trial.

Trial counsel states in his affidavit that he objected to the witness's repetitive characterizations during a bench conference, but did not request a curative instruction because he "did not think the objection warranted an instruction so long as the witness stopped using that phrase at that point." *Id*., p. 469. Thus, petitioner's allegation that trial counsel failed to object is refuted by the record. *See* R.R., Vol. 5, p. 120. Counsel did not, however, object in open court at the time the witness used the word.

In rejecting petitioner's claim of ineffectiveness, the state trial court made the following relevant finding of fact:

> 17.    Case did not object to a witness characterizing the incident as a murder, did not object to the prosecutor's jury arguments as being her personal opinion, and did not properly object to a potential comment on the applicant's post-arrest silence.

*Id*., p. 504. The trial court further made the following conclusion of law:

19.  Cases's failure to object to various pieces of evidence does not rise to the level of ineffective assistance of counsel.  The applicant has not proven that, had Case objected, the results of the proceeding would have been different.

*Id.*, p. 508 (citation omitted).  The Texas Court of Criminal Appeals relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

Even if the Court were to assume that trial counsel did not timely object and did not request a curative instruction, petitioner fails to establish that he was prejudiced by counsel's action.  To establish prejudice under *Strickland*, petitioner must show that, but for counsel's alleged error, there is a reasonable probability that the result of the trial would have been different. Petitioner's conclusory and speculative assertions of prejudice are insufficient to meet his burden under *Strickland* and AEDPA.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

K.    Failure to call petitioner

Petitioner complains that trial counsel should have called petitioner to the stand in response to co-defendant's invocation of her Fifth Amendment rights.

In addressing this claim on collateral review, trial counsel testified in his affidavit as follows:

38

> Counsel and defendant discussed whether the defendant should take the stand. Counsel advised the defendant that because of his criminal history, I did not believe it was in his best interest to take the stand. Having the jury be made aware of past crimes of the accused along with the fact that he absconded while on probation from another state, would not have helped the case. There was nothing to be gained by the defendant taking the stand as I believed we were able to fully develop the record to a sufficient point that the jury had all of the evidence, they just did not choose to believe our presentation. The defendant agreed and wholeheartedly did not want to take the stand after witnessing the prosecutor examining other witnesses. The decision was the defendant's, not counsel's.

*Id.*, p. 470.  Counsel further stated that:

> Even though counsel could not obtain information of the defendant's official criminal history, in spite of the court's order, counsel had discussed defendant's criminal history with the defendant and the possibility of him testifying. The defendant was able to recall certain criminal convictions, but was unsure of others, leading to the possibility that his criminal history was even more extensive than he had remembered. Without having an official criminal history, or previous judgments and convictions, it was clear that the defendant did have criminal convictions, making it unlikely that he could benefit from testifying in his behalf. However, counsel and the defendant discussed this possibility and after the trial beg[an] and the defendant witnessed how the prosecution examined and cross-examined witnesses, the defendant did not want to testify, for fear that the prosecutor would be able to obtain damaging information from him. His response when asked if he wanted to testify was 'no way.'

*Id.*, p. 477.  Counsel stated that, despite numerous hearings and orders, the State did not

disclose petitioner's criminal history.  *Id.*, p. 476.

In denying habeas relief on this claim, the state trial court made a conclusion of law

holding that trial counsel was not ineffective for advising the applicant not to testify, as it

constituted sound trial strategy.  *Id.*, p. 507.  The Texas Court of Criminal Appeals relied on

the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

Petitioner presents no probative evidence that he informed counsel that he wanted to testify after Diane MacBird invoked her Fifth Amendment privilege, nor does he rebut the strong presumption that counsel's advising petitioner not to testify was sound trial strategy. Petitioner offers only speculation and conclusory assertions that, had he testified, there is a reasonable probability that the result of the trial would have been different.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

      L.    <u>Post-arrest silence</u>

Petitioner complains that trial counsel failed to object to Detective Rogers's testimony that allegedly commented on petitioner's post-arrest silence, his right to counsel, or plea negotiations.

In responding to this claim on collateral review, trial counsel testified that he "did object, but made the incorrect objection and the court overruled my objection to the 'attorney-client privilege' since the defendant's attorney, Mr. Jerald Crow was present and this interview was conducted in his office." *Id*., p. 470.

The state trial court found that counsel did not properly object to a potential comment on petitioner's post-arrest silence, but concluded that petitioner failed to show actual prejudice under *Strickland*. *Id*., pp. 504, 507.

40

The intermediate state court of appeals, however, found that, even assuming counsel had raised an appropriate objection, the trial court did not err. The appellate court held as follows:

> Even if the objection was sufficient to preserve error, the trial court did not err in allowing the testimony. To show a violation of Henricks's right to remain silent, the offending language must be of such a character that the jury would necessarily take it as a comment on the defendant's right to remain silent. It is not sufficient that the language might be construed as a comment on the defendant's silence. Detective Rogers's testimony did not rise to the level of commenting on Henricks's right to remain silent. Henricks argues the jury could infer from Detective Rogers's testimony that, because Henricks retained an attorney and followed his advice by not talking to Detective Rogers, he must be guilty. However, the testimony must do more than create a possible inference. Detective Rogers testified that he did not interview Henricks during the investigation; however, the testimony does not indicate that Henricks refused to talk to Detective Rogers. In fact, the evidence showed that Henricks cooperated in the investigation by leading the police to the discovery of the body and the gun.
>
> Evidence that an accused retained counsel is not admissible to establish guilt. But, the fact that Detective Rogers went to Crow's office was not offered as evidence of guilt. Detective Rogers testified that he was asked to go to Crow's office as part of a homicide investigation. Henricks concedes that this testimony and testimony that Henricks was at Crow's office when Rogers arrived is proper. Because this testimony was proper, the State did not impermissibly comment on Henricks's exercise of his constitutional right to counsel.
>
> There was also no testimony regarding plea negotiations. Henricks was cooperating by helping the police find the body and the murder weapon. Henricks's trial strategy was to emphasize this cooperation. Henricks's attorney cross-examined Detective Rogers regarding Henricks's cooperation and his interactions with Crow. There was no testimony about Henricks entering a plea or the offer of a plea if he cooperated. The trial court did not err in allowing the testimony.

*Henricks*, p. 271–73 (citations omitted).

Because the state court determined that the complained-of testimony did not improperly comment on petitioner's post-arrest silence, and petitioner fails to establish otherwise, trial counsel was not ineffective in failing to object. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Petitioner does not show that, had counsel raised the objection, it would have been granted and the testimony excluded. Nor does petitioner overcome the strong presumption that trial counsel's decision not to object was sound trial strategy or that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 689. Neither deficient performance nor prejudice is established under *Strickland*, and petitioner does not meet his burden of proof under AEDPA.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

M.   State of mind

Petitioner contends that trial counsel should have investigated and presented evidence of petitioner's psychological condition or state of mind at the time of the offense.

In responding to this argument on collateral review, trial counsel testified to the following in his affidavit:

> Counsel spent numerous hours with the defendant in the same room and in the witness interview room at the Montgomery County Jail discussing the case with the defendant, obtaining information and preparing for trial. There was never any indication that the defendant suffered from any mental defect or was unable to assist with his defense at any time.
>
> Counsel did not attempt to obtain a psychologist or psychiatrist to assist with this case since there was not a scintilla of evidence indicating that the defendant suffered from any mental defect at the time of the offense or at any time later and was able to fully assist counsel with his defense.
>
> Counsel discussed the shooting and the defendant and his mother dragging the deceased's body into the forest. At no time, during my interview with the defendant and during the preparation for trial, was there ever any indication that the defendant suffered from any post-trauma stress or any mental defect whatsoever.

*Id.*, pp. 471–72. The state trial court asked trial counsel whether he retained a medical neurological expert to testify as to the effects, if any, petitioner may have experienced after allegedly being struck in the head by the decedent. Trial counsel stated that he believed petitioner had been struck on the head by a crow bar, and that he retained Dr. Sridhar Natarajan, a medical examiner with extensive experience in traumatic injuries and the results of trauma. Counsel stated that Dr. Natarajan testified at trial. *Id.*, pp. 471–72.

In rejecting petitioner's claim, the state trial court made the following relevant finding of fact and conclusion of law:

> 18.   Case did not seek out evidence relating to the applicant's mental state because he did not believe the applicant suffered from any abnormal mental states or disorders.

*Id.*, p. 594.

20.     The applicant has not identified what evidence concerning his mental state was relevant and admissible during trial.  Further, the applicant has not alleged that a witness was available and willing to testify regarding his mental state. The applicant has failed to properly support this ground for relief.

*Id.*, p. 508 (citations omitted).  The Texas Court of Criminal Appeals relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

Petitioner's claims complain of failure to investigate and omitted witnesses.  Petitioner presents no probative evidence establishing what counsel's further investigation would have revealed, or that it would have disclosed favorable, material evidence.  Consequently, he fails to establish deficient performance under *Strickland*.  Nor does he show that, but for counsel's failure to undertake such additional investigation, there is a reasonable probability that the result of the proceeding would have been different.  Further, petitioner presents no probative evidence of an omitted witness regarding his state of mind, the anticipated favorable testimony of such witness, or that the witness would have been available for trial and willing to testify.  Petitioner fails to meet his burden of proof under *Strickland* and AEDPA.

The state court denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of these claims.

N.    Prosecutor's personal opinion on facts

Petitioner next claims that trial counsel failed to object to the prosecutor's personal opinion that petitioner deliberately located and called Allen Srack to verify petitioner's story.

In responding to this claim on collateral review, trial counsel testified in his affidavit that he did not object to the State's comment because he "thought that the prosecutor would anger the jury by making that argument" and that he "felt that it was to our benefit because [Srack] appeared to be sincere and the jury seemed to by sympathetic to him and his speech difficulties." *Ex parte Henricks*, p. 475.  In explaining his strategy for refuting the State's comment that Srack fabricated his testimony, trial counsel stated that

> Counsel had developed and implemented all of the evidence and testimony in the case to follow our theory of the case.  My theory of the case and all of the evidence we presented to the jury and our entire case supported Srack's testimony.  Srack's testimony fit the theory of our case and by present[ing] a comprehensive theory to the jury, we aligned all of the evidence to support his testimony.

*Id*., p. 475.

In denying habeas relief, the state trial court made the following conclusion of law:

> 19.    Cases's failure to object to various pieces of evidence does not rise to the level of ineffective assistance of counsel.  The applicant has not proven that, had Case objected, the results of the proceeding would have been different.

*Id*., p. 508 (citation omitted).  The Texas Court of Criminal Appeals relied on the trial court's findings and conclusions in denying habeas relief.  *Id*., at cover.

45

Trial counsel set forth his reasons for not objecting, and demonstrated a reasonable trial strategy. As found by the state trial court, petitioner does not establish that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different. Nor does petitioner show that trial counsel's proffered trial strategy was unreasonable. Moreover, petitioner fails to show that, had counsel objected, it would have been reversible error for the court to overrule the objection. The failure to raise meritless motions or to make meritless objections does not result in the ineffective assistance of counsel. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Neither deficient performance nor prejudice under *Strickland* is shown, and petitioner does not meet his burden of proof under AEDPA.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

O.   <u>Srack's mental capacity</u>

Petitioner asserts that trial counsel should have obtained medical records for witness Allen Srack or otherwise investigate Srack's mental capacity.

In addressing this issue on collateral review, trial counsel testified in his affidavit as follows:

46

> Counsel did interview Allen Srack on more than one occasion.  Mr. Srack had
> a severe physical speech impediment, and counsel asked if he had any mental
> problems as well.  Mr. Srack informed counsel of medications he took that
> 'knocked him out,' but never indicated that he had any mental problems or
> impairment [from] those medications or a 'mental condition.'  Counsel did not
> subpoena his medical records nor have his mental capacity investigated, other
> than to interview him several times and ask him questions about his disability.
> Since he was able to correctly recall information and repeat the same series of
> events and information, counsel had no reason to believe he had any problems
> with his mental capacity that needed investigation.

*Id*., p. 474.

In rejecting petitioner's claim regarding Srack, the trial court made the following

finding of fact and conclusion of law:

> 20.   Case did not seek out evidence relating to the medical condition of
>       Allen Srack because he did not believe it would uncover anything
>       relevant or admissible.
>
>                         *    *    *    *
>
> 22.   The applicant has not demonstrated that medical records relating to
>       Allen Srack existed, nor how those records would have benefited his
>       case.  Case was not ineffective for failing to seek out such evidence, if
>       indeed it existed at all.

*Id*., pp. 504, 508 (citation omitted).  The Texas Court of Criminal Appeals relied on these

findings and conclusions in denying habeas relief.  *Id*., at cover.

Petitioner does not submit any probative evidence showing that medical records for

Srack exist or could have been obtained  by trial counsel, and no deficient performance is

shown.  Moreover, petitioner fails to show that, if such medical records existed, they would

have provided relevant and material evidence in favor of the defense. Petitioner's conclusory

47

allegations and speculation are unsupported in the record, and provide him no basis for habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (stating that mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue).

In short, petitioner fails to establish that, but for trial counsel's failure to obtain available mental capacity medical records for Srack, there is a reasonable probability that the result of the trial would have been different. Petitioner does not meet his burden of proof under AEDPA or *Strickland*.

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

P.     Prosecutor's personal opinion on punishment

Petitioner complains that trial counsel failed to object to the prosecutor's use of her personal opinion during the punishment phase of trial regarding the appropriate punishment for petitioner.

In addressing why he did not raise an objection, trial counsel testified in his affidavit that:

> I thought this would make the jury angry with the prosecutor, for her to request for the high number of years, as punishment. I thought the jury would do the exact opposite when they heard her ask for that amount of time.

*Id.*, p. 475.

48

In rejecting petitioner's claim of ineffective assistance, the state trial court made the following relevant finding of fact and conclusion of law:

> 17.     Case did not object to a witness characterizing the incident as a murder, did not object to the prosecutor's jury arguments as being her personal opinion, and did not properly object to a potential comment on the applicant's post-arrest silence.

*Id.*, p. 504.

> 19.     Cases's failure to object to various pieces of evidence does not rise to the level of ineffective assistance of counsel.  The applicant has not proven that, had Case objected, the results of the proceeding would have been different.

*Id.*, p. 508 (citation omitted).  The Texas Court of Criminal Appeals relied on the trial court's findings and conclusions in denying habeas relief.  *Id.*, at cover.

Trial counsel set forth a reasonable trial strategy in explaining his reasons for not objecting to the State's comment.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  Here, petitioner presents no probative evidence rebutting the presumed reasonableness of counsel's trial strategy, and no deficient performance is shown.  Moreover, he fails to establish that had counsel objected, the trial court would have committed reversible error if it denied the objection.  The failure to raise meritless motions or to make meritless objections does not result in the ineffective assistance of counsel.  *Koch*, 907 F.2d at 527.

49

Petitioner further fails to establish prejudice, in that he does not show that his sentence would have been significantly less harsh had counsel objected.  To establish *Strickland* prejudice in a non-capital case at the punishment phase, a petitioner "must show that there is a reasonable probability that absent counsel's errors, the defendant's sentence would have been significantly less harsh."  *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994). Petitioner does not meet his burden of proof under *Strickland* or AEDPA.

The state court denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

Q.    Petitioner's character evidence

Petitioner next asserts that trial counsel was ineffective by opening the door to the use of character evidence against petitioner by referring to Robert MacBird as an "angry alcoholic" during his opening statement.

In addition to calling the decedent an "angry alcoholic," trial counsel made the following statement during opening argument:

> You will learn during the day of December the 4th, 2005, Robert MacBird was beating Brian's mother.  He beat her not once, not twice, but he attacked her three times, three times on December 4th, 2005.  This is a case about abuse. It's a case about self-defense, and it's a case about defending your mother.

*Henricks*, p. 274.

50

In discussing his trial strategy, trial counsel testified in his affidavit on collateral review that his purpose in making these arguments was to set "the stage for showing the jury first aggressor evidence that when the decedent drank, he became very angry and confrontational." *Id.*, p. 475.

The intermediate state appellate court ruled that petitioner's character evidence was admissible because petitioner had raised the issue of self defense.  The state court held as follows:

> Henricks's case was based on the defensive theory that Robert was the first aggressor and that Henricks acted in self-defense and in defense of his mother. The State was allowed to rebut that with character evidence that Henricks was aggressive and not protective toward his mother.   The trial court did not err in allowing Srack's testimony about Henricks's character.

*Henricks v. State*, p. 274 (citation omitted).  In short, the admissibility of petitioner's character evidence did not hinge solely on trial counsel's referring to the deceased as an angry alcoholic.  Rather, under state law, the admissibility of petitioner's character evidence arose with petitioner's claims of self defense and defense of another.  It is abundantly clear from the record that it was petitioner's position throughout trial that he had acted in self defense and/or in defense of Diane MacBird in killing the decedent.

Petitioner fails to show that, had counsel omitted the "angry alcoholic" reference, petitioner's character evidence would not have been admissible under state law.  Petitioner does not establish that, but for counsel's "angry alcoholic" comment, there is a reasonable probability that the result of the trial would have been different.  Moreover, he does not rebut

the strong presumption that trial counsel's actions were the product of a reasoned trial strategy.  Neither deficient performance nor actual prejudice is shown, and petitioner fails to meet his burden under AEDPA.

The state court denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

R.   <u>Mitigating evidence</u>

Petitioner next complains that trial counsel failed to present proper mitigating evidence during the punishment phase of trial.  Specifically, he argues that counsel called his grandmother to testify, but did not call his aunts.

In addressing this issue, trial counsel testified in his affidavit on state collateral review as follows:

> There was a dearth of mitigation evidence for the defendant.  His grandmother was a very sweet, possibly sympathetic lady that could discuss his childhood, however, his aunts were neither around him much when he was a child, nor were they aware of any mitigation, other than his mother had mental health problems.  Unfortunately, his aunts did not have much information to present about his childhood or mitigation, other than general family stories they repeated, which were hearsay, as they never personally observed him much as a child or while he was growing up.  Their testimony was duplicative of his grandmother's and she was a much better presenter, so she was chosen to testify on his behalf.

*Id.*, p. 477–79.  Counsel further testified that he called the grandmother to testify at the punishment hearing because "[s]he was the only witness who could possibly convince the

jury of assessing a lighter sentence.  There were no other witnesses that could testify on his

behalf at punishment that I thought could sway the jury."  *Id*., p. 477.

In rejecting petitioner's claim on collateral review, the trial court made the following

findings of fact:

> 10.   Case interviewed members of the applicant's family and considered
>        whether their testimony would be beneficial to the applicant.
>
> *   *   *   *
>
> 21.   Case contacted members of the applicant's family and had them
>        available to testify at punishment.  Case chose to present only the
>        applicant's grandmother's testimony because the testimony of the
>        applicant's aunts would have been cumulative and they were less
>        sympathetic witnesses than the grandmother.

*Id*., p. 503–04.  The trial court also made the following conclusion of law:

> 23.   Case was not ineffective for choosing to present only the applicant's
>        grandmother's testimony during the punishment phase of trial.  As the
>        testimony of the applicant's aunts was merely cumulative of the
>        grandmother's testimony, Case made a valid strategic choice as to the
>        nature of his presentation.

*Id*., p. 509.   The Texas Court of Criminal Appeals relied on these findings and conclusion

in denying habeas relief.  *Id*., at cover.

Petitioner presents no probative evidence that the aunts would have presented

favorable, non-cumulative mitigation evidence for purposes of punishment.  His conclusory

assertions are speculative and unsupported in the record, and are insufficient to raise a

genuine issue of material fact precluding summary judgment.  *See Lavernia v. Lynaugh*, 845

F.2d 493, 498 (5th Cir. 1988) (holding that counsel is not ineffective for failing to call

witnesses to testify to cumulative evidence).   To establish *Strickland* prejudice in a non-capital case, a petitioner "must show that there is a reasonable probability that absent counsel's errors, the defendant's sentence would have been significantly less harsh." *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994).  Petitioner fails to establish that his sentence would have been significantly less harsh had his aunts been called to testify. Petitioner does not meet his burden of proof under *Strickland* or AEDPA.

The state court denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

## V.   TRIAL COURT ERROR

Petitioner asserts that the trial court erred in the following particulars.

### A.   Right to remain silent

Petitioner argues that the trial court erred in allowing testimony regarding petitioner's exercise of his rights to retain counsel and to remain silent, and testimony regarding plea negotiations.

Petitioner raised this issue on direct appeal.  In rejecting petitioner's argument, the intermediate state court of appeals held as follows:

> Detective Marvin Rogers testified that he received an instruction from his lieutenant to go to Crow's office.  Detective Rogers testified that Diane and Henricks were present when he arrived.  In response to questions regarding what occurred at Crow's office, Detective Rogers testified as follows:

54

Q.      Were you ever shown or did you ever observe a male?

A.      Yes.

Q.      Outside of Jerald Crow?

A.      Yes.

Q.      Were you given that individual's name?

A.      Yes.

Q.      Was that Brian [Keith] Henricks?

A.      Yes.

[DEFENSE COUNSEL]:   Excuse me, I'm going to object, Your Honor, to anything related to this officer by Mr. Crow.   It would fall under attorney-client privilege and my client's never waived that privilege.

THE COURT:      Overruled.

Q. [PROSECUTOR]:      Now, at this point, you know it's a murder investigation, correct?

A.      Correct.

Q.      Okay. Were these two people identified to you as suspects?

A.      At the time, Mr. Henricks was.

Q.      Okay.  And did you at any time ask to speak to these two individuals, Diane Marie MacBird and Brian [Keith] Henricks?

A.      Yes, I did.

Q.      And were you given permission to speak with either one of them?

A.      I was given permission to speak with Diane MacBird.

                            *     *     *     *

Q.      Okay.  When you asked to speak with Brian [Keith] Henricks, what were you told?

A.      His attorney wanted to speak to him at this time. He wanted to work with him further for possibly further cooperation down the road.

[DEFENSE COUNSEL]:   Objection. Same objection, Your Honor, attorney-client privilege.

THE COURT:      Overruled.

Q. [PROSECUTOR]:      This whole encounter at Jerald Crow's office, did Mr. Crow ever indicate to you how these people got to his office?

[DEFENSE COUNSEL]:   Objection, again, Your Honor.

[PROSECUTOR]:   That's a yes or no. We're not asking for—

THE COURT:      Overruled.

[DEFENSE COUNSEL]:   Attorney-client privilege.

Q. [PROSECUTOR]:      Did he indicate how he got there?

A.      Yes.

Q.      And did he indicate they would cooperate with you fully?

A.      Eventually, yes.

Q.      And did you ever get any further cooperation?

[DEFENSE COUNSEL]:     Objection, Your Honor.  Same objection, attorney-client privilege.

THE COURT:     Overruled.

THE WITNESS:     No.

Q. [PROSECUTOR]:     Throughout your investigation, back from that date in December of 05, have you ever interviewed Brian [Keith] Henricks?

A.     No.

Q.     Have you had a few conversations with him that have been limited to other matters?

A.     Yes.

Henricks argues that Detective Rogers's testimony is evidence that Henricks exercised his right to retain counsel and that he followed his counsel's advice and exercised his right to remain silent.  Henricks also argues that Detective Rogers's testimony implies that Henricks admitted guilt to his attorney and that he was willing to cooperate in the hopes of negotiating a lighter sentence.

To preserve an issue for appeal, a timely objection must be made that states the specific grounds for objection, unless the specific grounds are apparent from the context.  A general or imprecise objection may be sufficient to preserve error for appeal if the legal basis for the objection is obvious to the court and to opposing counsel.  Preservation of error provides trial courts an opportunity to prevent or cure errors so as to permit the trial to continue to a final conclusion free from attack and reversal on appeal.  Therefore, an objection must be specific enough so that the trial court can make an informed ruling on the subject matter of the objection.  When the objection is not specific and the legal basis is not obvious, then an appellate court cannot reach the merits of the issue on appeal.

Henricks did not object to Rogers's testimony on the ground that it was a comment on Henricks's right to retain counsel or his right to remain silent.  Henricks's only objection was to statements made by Crow because these statements were protected by the attorney-client privilege.  Attorney-client

privilege protects confidential communications between the client and his attorney made for the purpose of facilitating the retention of professional legal services to the client. Henricks argues that the objection, while imprecise, was not fatal because the grounds for objection were apparent from the context of the testimony. We disagree. There is nothing in the record that would alert the trial court that Henricks was objecting to a violation of his constitutional rights. Instead, the record indicates that counsel made the objection that he intended to make. Because that objection does not comport with Henricks's complaint on appeal, this issue is not preserved for review.

Even if the objection was sufficient to preserve error, the trial court did not err in allowing the testimony. To show a violation of Henricks's right to remain silent, the offending language must be of such a character that the jury would necessarily take it as a comment on the defendant's right to remain silent. It is not sufficient that the language might be construed as a comment on the defendant's silence. Detective Rogers's testimony did not rise to the level of commenting on Henricks's right to remain silent. Henricks argues the jury could infer from Detective Rogers's testimony that, because Henricks retained an attorney and followed his advice by not talking to Detective Rogers, he must be guilty. However, the testimony must do more than create a possible inference. Detective Rogers testified that he did not interview Henricks during the investigation; however, the testimony does not indicate that Henricks refused to talk to Detective Rogers. In fact, the evidence showed that Henricks cooperated in the investigation by leading the police to the discovery of the body and the gun.

Evidence that an accused retained counsel is not admissible to establish guilt. But, the fact that Detective Rogers went to Crow's office was not offered as evidence of guilt. Detective Rogers testified that he was asked to go to Crow's office as part of a homicide investigation. Henricks concedes that this testimony and testimony that Henricks was at Crow's office when Rogers arrived is proper. Because this testimony was proper, the State did not impermissibly comment on Henricks's exercise of his constitutional right to counsel.

There was also no testimony regarding plea negotiations. Henricks was cooperating by helping the police find the body and the murder weapon. Henricks's trial strategy was to emphasize this cooperation. Henricks's attorney cross-examined Detective Rogers regarding Henricks's cooperation and his interactions with Crow. There was no testimony about Henricks

entering a plea or the offer of a plea if he cooperated.  The trial court did not err in allowing the testimony.

*Henricks*, p. 271–73 (citations omitted).

The question before this Court is not whether the state trial court properly applied state evidentiary rules, but whether petitioner's federal constitutional rights were violated by the state trial court's rulings on evidentiary matters.  *See Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005) (holding federal habeas review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated federal constitutional protections).  Due process is implicated only for rulings "of such a magnitude" or "so egregious" that they "render the trial fundamentally unfair."  *Id*.  Relief will be warranted only when the challenged evidence "played a crucial, critical, and highly significant role in the trial."  *Id*.  The due process inquiry must consider the significance of the challenged evidence "in the context of the entire trial."  *See Gonzales v. Thaler*, 643 F.3d 425, 430–31 (5th Cir. 2011).

The Court has carefully reviewed the record and finds no fault with the state court's determination in context of federal due process protections throughout the entire trial.  The underlying facts do not establish any impermissible comment on petitioner's right to remain silent or the exercise of his constitutional right to counsel, nor is there any evidence of, or testimony regarding, actual or attempted plea negotiations.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal

law, or was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment dismissal of this claim.

B.     Admitting character evidence

Petitioner argues that the trial court erred in allowing evidence of his character because his character had not been placed in issue.

Petitioner raised this issue on direct appeal.  In rejecting petitioner's argument and affirming the conviction, the intermediate state court of appeals held as follows:

> Henricks argues that evidence of Henricks's character was improperly admitted because his character was never placed in issue. We review the trial court's evidentiary rulings for an abuse of discretion.  As long as the trial court's ruling is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, it must be upheld.
>
> Generally, character evidence is not admissible to show that a person acted in conformity with that character on a particular occasion.  However, a character trait of the accused offered by the accused or offered by the prosecution to rebut a character trait offered by the accused is admissible.  Admissible character evidence can be offered only in the form of reputation or opinion evidence.  Specific instances of conduct may be admissible if the person's character is an essential element of a charge, claim, or defense.
>
> Henricks's opening statement raised the issue of self-defense.  Henricks attacked the victim's character by stating that Robert was an angry alcoholic.  The State objected to this statement.  The trial court held that, while Henricks could not attack the victim's character, he could discuss self-defense.  Henricks continued his opening statement:
>
>> You will learn during the day of December the 4th, 2005, Robert MacBird was beating Brian's mother.  He beat her not once, not twice, but he attacked her three times, three times on December 4th, 2005.  This is a case about abuse.  It's a case about self-defense, and it's a case about defending your mother.

Henricks concluded his opening statement by saying that he shot and killed Robert in fear for his life and in defense of his mother.

The State called William Allen Srack to testify.  Srack testified that he lived in the same subdivision as Henricks and the MacBirds and that they had visited each other's homes.  Srack testified about the events of the night of December 4, 2005.  Srack testified that Henricks came to his house the night of the shooting and told him that Robert had Diane on the ground and was trying to hurt her.  Henricks interfered attempting to help Diane.  Srack testified that Henricks told him that Robert had a tire tool and was hitting Henricks and Diane with it.

The State asked for a sidebar and gave notice of its intent to go into Henricks's character.  Henricks objected, stating that it was inadmissible specific instances of conduct.  The trial court allowed the testimony, stating that the self-defense issue had been raised.  The State asked Srack if Henricks had a reputation for being peaceful.  Srack testified that he had seen examples of Henricks being aggressive and that his tone of voice was threatening.  He further testified that there had been times when Diane had asked him to come to her home to protect her from Henricks.

Henricks's case was based on the defensive theory that Robert was the first aggressor and that Henricks acted in self-defense and in defense of his mother.  The State was allowed to rebut that with character evidence that Henricks was aggressive and not protective toward his mother.  The trial court did not err in allowing Srack's testimony about Henricks's character.

*Henricks v. State*, pp. 273–74 (citations omitted).

The intermediate court of appeals found that the evidence was properly admitted under state law. As before, this Court is bound by that determination, as it does not sit as a "super" state court to review matters and applications of state law.  The question before this Court is not whether the state trial court properly applied state evidentiary rules but, rather, whether petitioner's federal constitutional rights were violated by the state trial court's

61

rulings on evidentiary matters.  Neither petitioner nor the record before this Court establishes any such violation.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

C.     Violation of discovery order, denial of a continuance

Petitioner argues that the State's actions in withholding discovery regarding blood spatter testimony deprived him of a fair trial and that the trial court should not have allowed the evidence or, alternatively, should have granted his motion for continuance.

In denying these grounds on direct appeal, the intermediate state court of appeals held as follows:

> Upon defendant's request or a trial court's order, the State is required to disclose a list of witnesses it intends to use at trial, photographs, defendant's written statements, letters, accounts, and other evidence material to any matter in the case.  Evidence that is willfully withheld from disclosure under a discovery order should be excluded from evidence.  Because exclusion is an extreme solution, it should not be imposed absent willfulness on the part of the prosecution.  Determining if the State acted willfully encompasses two factors: (1) whether the prosecutor acted in bad faith in failing to disclose the evidence and (2) whether the defendant can reasonably anticipate the contested evidence.
>
> In determining whether the State acted in bad faith, we ask the following: (1) whether the defendant established that the State intended to deceive him; (2) whether the State's notice left the defendant adequate time to prepare; and (3) whether the State freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly

notifying the defendant of new witnesses.  Similarly, in determining whether the defense could have anticipated the State's witness, we ask the following: (1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise; and (3) the degree to which the trial court was able to remedy that surprise.

Henricks filed a discovery motion, but there is no signed standard discovery order in the record. Henricks attached an unsigned copy of the standard discovery order for Montgomery County to his motion for new trial. The standard discovery order states that the State must produce a list of anticipated trial witnesses, lab reports, physical evidence, reports of experts, and photographs. The standard discovery order also states that any photographs, diagrams, or models prepared as jury aids are considered work product.

A week prior to trial, the State filed a motion for continuance, stating that lab results regarding blood spatter and DNA would be unavailable until after the scheduled trial date.  The trial court granted the continuance.  Subsequently, the State filed a discovery response listing Investigator Celestina Rossi as a fact witness.  The next day, the State amended its discovery response listing Investigator Rossi as an expert witness in the area of crime scene investigation. Henricks filed a motion for continuance, stating that he had not been provided with some discovery and that DNA results and blood spatter results would not be available until ten days before trial.  Henricks argued that the standard discovery order required that discovery be made available at least twenty days before trial.  The trial court denied the motion.  On the day of trial, the State supplemented its discovery response by adding that Investigator Rossi would testify as a firearms expert, specifically regarding the distance of the firearm from the victim when discharged.

Investigator Rossi testified that she was the lead investigator on the case in charge of collecting evidence at the scene.  She also described evidence that was collected at the scene.  Henricks stipulated that Investigator Rossi was an expert in the fields of bloodstain pattern analysis—including blood spatter, castoff, and impact—and in the field of firing distances. Investigator Rossi testified that she believed it would aid the jury in understanding her testimony if the jury was permitted to view a PowerPoint presentation.  The first part of the PowerPoint presentation consisted of definitions and descriptions of different types and patterns of bloodstains.  The second part of the presentation was comprised of photographs that Investigator Rossi took at the scene. Henricks objected, stating that he had no notice of the presentation.  The State

argued that the PowerPoint presentation was a demonstrative aid that was prepared to aid the jury with Investigator Rossi's testimony. The State also argued that the photographs had been made available to Henricks prior to trial. The trial court allowed the PowerPoint presentation.

Investigator Rossi testified about each photograph in the presentation describing what type of stain the blood appeared to be: transfer, castoff, or expiratory stain and high, medium, or low velocity stain. The photographs were already entered into evidence. The photographs had measurements written on them regarding the size of the bloodstain. The PowerPoint presentation was not introduced into evidence and is not part of the appellate record.

Henricks asked for the appointment of an expert to rebut Investigator Rossi's testimony regarding blood spatter. The trial court allowed the appointment of an expert, Lou Akin. The trial court allowed Henricks extra time to prepare his expert and to cross-examine Investigator Rossi. Also, at the conclusion of the State's case-in-chief, the trial court allowed Henricks more time to prepare his case by adjourning early. Akin testified for the defense regarding blood spatter and rebutted Investigator Rossi's opinion.

There is nothing in the record to suggest that the State willfully withheld discovery. Almost a month before trial began, the State revealed in its motion for continuance that it was anticipating blood spatter testimony. At least fourteen days prior to trial, Investigator Rossi was listed as an expert witness in the area of crime scene investigation. The State also updated its discovery responses and gave Henricks access to the evidence in the case. During trial, Henricks stipulated to Investigator Rossi's expertise in the area of blood spatter. Further, in an attempt to remedy any surprise Henricks may have experienced, the trial court appointed a blood spatter expert for Henricks and allowed Henricks extra time, mid-trial, to prepare his expert. The State did not act in bad faith, and Henricks had sufficient notice to anticipate the blood spatter testimony.

The trial court did not err in allowing Investigator Rossi's PowerPoint presentation. The presentation was only an aid for the jury to understand Investigator Rossi's testimony. A witness may be allowed to demonstrate before the jury so as to make her testimony more plain and clear. Her testimony consisted of complex blood spatter analysis, and the presentation was used as a visual aid to assist the jury while she testified. Henricks had

access to all the photographs used in the presentation, and they had already been entered into evidence.  Further, the PowerPoint presentation was not entered into evidence and was not available to the jury during its deliberations.

The trial court did not err in denying Henricks's motion for continuance. Henricks knew there would be testimony on blood spatter when the State filed its motion for continuance, almost two weeks before he filed his motion. Henricks had sufficient time to prepare for any testimony regarding blood spatter.

*Henricks*, pp. 274–76 (citations, footnote omitted).

The state trial court found that the State did not willfully withhold evidence or act in bad faith, and that trial counsel had sufficient notice to anticipate the blood spatter testimony. To the extent these determinations constitute factual findings, petitioner fails to show that they are objectively unreasonable in light of the evidence presented to the state court, and he does not rebut their presumed correctness by clear and convincing evidence.  *See Miller-El*, 537 U.S. at 330–31.  Nor does he demonstrate the violation of a right afforded him under the federal constitution.  Petitioner's conclusory allegations and speculation are unsupported in the record, do not establish the denial of a fair trial, and afford him no grounds for federal habeas relief in this proceeding.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

D.     In-court demonstration of offense

Petitioner asserts that the trial court erred in allowing Investigator Rossi to demonstrate for the jury her theory as to how the deceased was killed.  In rejecting this claim on direct appeal, the intermediate state court held as follows:

> The trial court has discretion whether to admit or exclude a demonstration.  The court abuses its discretion by allowing a demonstration if the facts in evidence do not show that the proposed demonstration was conducted under substantially similar circumstances and conditions to the event to which the demonstration relates.  A demonstration need not be made under identical conditions of the event. Dissimilarities in the demonstration to the actual event go to the weight to be given the evidence and not the admissibility of the evidence.

> After Investigator Rossi testified regarding the physical evidence observed and collected at the crime scene, the State asked Investigator Rossi if she had an opinion as to how the bullets entered and exited the body and if a demonstration would aid the jury in understanding her testimony.  Henricks objected to the demonstration on the basis of surprise and for the reasons that it was outside the area of the witness's expertise and that the proper witness for that testimony was Dr. Patricia Moore, who performed the autopsy.  The trial court asked to see the demonstration outside the presence of the jury.  The demonstration was presented outside the presence of the jury, and Henricks again objected, stating that the demonstration was misleading and that there was no evidence regarding the trajectory of the bullets within the body.  The trial court allowed the demonstration but gave this limiting instruction to the jury:

>> Demonstrations of this nature are based upon the recreation of witnesses who are doing the demonstration, based upon what they feel they have learned from the crime scene or, et cetera.  This is not an actual recreation of what happened.  This is their opinion of what happened.  And you need—you are the ones who decide what weight to be given to the demonstration, if any.

> Investigator Rossi testified that the angles used in the demonstration were approximate and that it was not done to scale.  Investigator Rossi used

different colored rods to represent each gunshot wound.  Investigator Rossi positioned each rod to demonstrate her opinion as to the position of Robert's body at the time of each shot based on the entry and exit wounds.

The trial court did not abuse its discretion in allowing the demonstration.  The demonstration was supported by facts in evidence.  Investigator Rossi's testimony was based on her personal observations as well as her deductions from the evidence collected at the scene.  Because Investigator Rossi gave extensive testimony regarding the physical evidence and made reasonable deductions from it, we find that the demonstration was substantially similar to the actual event as theorized by the State.

*Henricks*, p. 277 (citations omitted).

The admissibility of the demonstration was a matter arising solely under, and determined by, state law.  This Court cannot review the propriety of the state court's interpretation and application of state law, and petitioner shows no impingement of a federal constitutional protection.  To any extent that petitioner claims the demonstration denied him a fair trial, his conclusory allegations and speculation are unsupported in the record and provide him no basis for federal habeas relief.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

E.    Deadly weapon finding

Petitioner contends that the trial court erred in making a deadly weapon finding.  In rejecting this claim on direct appeal, the intermediate state court of appeals held as follows:

Henricks argues that the trial court erred by sua sponte adding a deadly weapon finding to the judgment. A defendant is not eligible for community supervision when there is an affirmative finding that a deadly weapon was used or exhibited during the commission of the offense. Also, a defendant's eligibility for parole is affected by a deadly weapon finding. A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

The trial court may enter an affirmative finding in the judgment on the use of a deadly weapon when the indictment alleges use of a deadly weapon, the weapon is deadly *per se*, or the factfinder affirmatively answers a special issue on the use of a deadly weapon. When the indictment specifically places the issue before the jury, then an affirmative finding is de facto made when the jury finds the defendant guilty as charged in the indictment. An affirmative finding will arise as a matter of law when the jury finds that a firearm was used in the commission of the offense because a firearm is a deadly weapon *per se.* In this case, the trial court did not err in making the affirmative finding for the use of a deadly weapon. The indictment placed the issue before the jury by alleging that Henricks caused the death of Robert by shooting him with a firearm. The jury found Henricks guilty as alleged in the indictment. Therefore, the deadly weapon finding arose as a matter of law. The trial court did not err in entering a deadly weapon finding in the judgment.

*Henricks*, p. 277–78 (citations omitted).

The appropriateness of a deadly weapon finding is a matter arising solely under state law. In the present case, the state court found that the deadly weapon finding was proper under state law, and no issue of federal constitutional dimension is raised. Again, this Court cannot review the appropriateness of the state court's interpretation and application of state law. To any extent petitioner claims that the finding denied him federal due process, he presents neither factual nor legal authority in support of such claim, and this Court finds

none.  Petitioner's mere disagreement with the state trial court's decision affords him no basis for habeas relief.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

F.     Denial of objection to expert's credibility

Petitioner next argues that the trial court erred in denying defense counsel's objections to the credibility of the State's expert witness, Patricia Moore, M.D., or his efforts to impeach her as an expert witness.  Petitioner asserts that these actions denied him the right to present a complete defense.

Petitioner was allowed to impeach Moore as to her qualifications and background, as shown by the following in trial counsel's affidavit:

> Counsel considered and did challenge Dr. Moore's qualifications.  Counsel examined Dr. Moore about her fraudulent and false claims to the Medical Board that she was not working, when in fact she was, in violation of her license.  It was counsel's belief that Dr. Moore was ineligible to practice medicine in the State of Texas based on this and counsel attempted to persuade the court, but was unsuccessful.  Counsel also challenged Dr. Moore's conclusions as being those of the police without being independently verified, by her autopsy.  In fact, during the trial, counsel was able to get Dr. Moore to admit that she had, in the past, changed autopsies based on police requests, when she at first stated she never did such a thing and the record of her affidavit was admitted into evidence based on this.

*Id.*, p. 467.

In denying these claims on collateral review, the state trial court made the following conclusions of law:

> 5.     The applicant was not denied an opportunity to present a complete defense by this Court's limitation of his impeachment of Dr. Patricia Moore, because cause of death was not at issue.

*Ex parte Henricks*, p. 505.  The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief.  *Id*., at cover.

Petitioner agrees in his response to the motion for summary judgment that cause of death was not at issue at trial: "It was never an issue at trial that Petitioner shot and killed Robert MacBird, or, any issue related to that."  (Docket Entry No. 16, p. 24.)  Rather, petitioner contends that the issue was whether "Petitioner intend[ed] to kill Robert MacBird, or did Petitioner kill Robert MacBird in self-defense[.]"  *Id*.  Moore performed the autopsy on the decedent, and  expressed no opinion on the issue of self defense.  Whether the decedent died of a gunshot wound or by blunt force trauma, it was undisputed that petitioner caused the death.  Petitioner does not show that any additional impeachment of Moore would have aided the jury in determining the issue of self defense.

The state court denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of these claims.

## VI.  PROSECUTORIAL MISCONDUCT

Petitioner raises the following two claims of prosecutorial misconduct.

A.      Discovery order violation

Petitioner argues that the State violated the trial court's standing discovery order by withholding information regarding the blood-spatter evidence. Petitioner claims that the State's actions denied him due process. This issue is factually and legally analogous to petitioner's earlier claim that the State's actions denied him a fair trial, and requires a similar determination.

 In denying petitioner's claim, the intermediate state court of appeals held as follows:

Upon defendant's request or a trial court's order, the State is required to disclose a list of witnesses it intends to use at trial, photographs, defendant's written statements, letters, accounts, and other evidence material to any matter in the case.  Evidence that is willfully withheld from disclosure under a discovery order should be excluded from evidence.  Because exclusion is an extreme solution, it should not be imposed absent willfulness on the part of the prosecution.  Determining if the State acted willfully encompasses two factors: (1) whether the prosecutor acted in bad faith in failing to disclose the evidence and (2) whether the defendant can reasonably anticipate the contested evidence.

In determining whether the State acted in bad faith, we ask the following: (1) whether the defendant established that the State intended to deceive him; (2) whether the State's notice left the defendant adequate time to prepare; and (3) whether the State freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly notifying the defendant of new witnesses.  Similarly, in determining whether the defense could have anticipated the State's witness, we ask the following: (1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise; and (3) the degree to which the trial court was able to remedy that surprise.

71

Henricks filed a discovery motion, but there is no signed standard discovery order in the record. Henricks attached an unsigned copy of the standard discovery order for Montgomery County to his motion for new trial. The standard discovery order states that the State must produce a list of anticipated trial witnesses, lab reports, physical evidence, reports of experts, and photographs. The standard discovery order also states that any photographs, diagrams, or models prepared as jury aids are considered work product.

A week prior to trial, the State filed a motion for continuance, stating that lab results regarding blood spatter and DNA would be unavailable until after the scheduled trial date.  The trial court granted the continuance.  Subsequently, the State filed a discovery response listing Investigator Celestina Rossi as a fact witness.  The next day, the State amended its discovery response listing Investigator Rossi as an expert witness in the area of crime scene investigation. Henricks filed a motion for continuance, stating that he had not been provided with some discovery and that DNA results and blood spatter results would not be available until ten days before trial.  Henricks argued that the standard discovery order required that discovery be made available at least twenty days before trial.  The trial court denied the motion.  On the day of trial, the State supplemented its discovery response by adding that Investigator Rossi would testify as a firearms expert, specifically regarding the distance of the firearm from the victim when discharged.

\*     \*     \*     \*

Henricks asked for the appointment of an expert to rebut Investigator Rossi's testimony regarding blood spatter.  The trial court allowed the appointment of an expert, Lou Akin.  The trial court allowed Henricks extra time to prepare his expert and to cross-examine Investigator Rossi.  Also, at the conclusion of the State's case-in-chief, the trial court allowed Henricks more time to prepare his case by adjourning early.  Akin testified for the defense regarding blood spatter and rebutted Investigator Rossi's opinion.

There is nothing in the record to suggest that the State willfully withheld discovery.  Almost a month before trial began, the State revealed in its motion for continuance that it was anticipating blood spatter testimony.  At least fourteen days prior to trial, Investigator Rossi was listed as an expert witness in the area of crime scene investigation.  The State also updated its discovery responses and gave Henricks access to the evidence in the case.  During trial, Henricks stipulated to Investigator Rossi's expertise in the area of blood

72

spatter.  Further, in an attempt to remedy any surprise Henricks may have experienced, the trial court appointed a blood spatter expert for Henricks and allowed Henricks extra time, mid-trial, to prepare his expert.  The State did not act in bad faith, and Henricks had sufficient notice to anticipate the blood spatter testimony.

*Henricks*, pp. 274–76 (citations, footnote omitted).

This Court is bound by the state trial court's determination that the State did not violate the trial court's standing discovery order and that the State had not willfully withheld discovery.  Petitioner presents no probative evidence that the State's complained of actions denied him due process, or that he was unable to present a complete defense.  His conclusory and speculative allegations of a constitutional violation and prejudicial harm are unsupported in the record, and afford him no basis for federal habeas relief.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

B.      *Brady* violation

Petitioner argues that the State violated *Brady* by failing to disclose exculpatory, material evidence, namely, a receipt showing that decedent had purchased several alcoholic drinks the night of the offense.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused after a request violates

73

due process where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution by its actions.  To prevail on a *Brady* claim, a petitioner must establish that the evidence at issue was favorable to the defense, either because it was exculpatory or was impeaching; that the evidence was suppressed by the State, either willfully or inadvertently; and that prejudice ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Pitonyak v. Stephens*, 732 F.3d 525, 532 (5th Cir. 2013).

Petitioner admitted in his state habeas application that trial counsel had been aware of the receipt and examined it at the Montgomery County Sheriff's Department in January and February of 2007, well before trial in this case.  *Ex parte Henricks*, p. 44.  Thus, it cannot be said that the State *suppressed* the item of evidence, as it had disclosed the receipt to defense counsel well in advance of trial.  Rather, petitioner's true complaint is that the State refused to produce it at trial upon petitioner's request, resulting in petitioner's inability to introduce it into evidence.

In denying petitioner's claim on collateral review, the state trial court made the following conclusion of law:

> 6.    The applicant was not denied the opportunity to present a complete defense because his counsel was able to elicit testimony that Robert was intoxicated on the night in question.  Even if his counsel had introduced a receipt showing the purchase of beer, that evidence does not demonstrate that Robert consumed the beer.  The toxicology evidence in the record was sufficient for the jury to have concluded that Robert was intoxicated.

*Ex parte Henricks*, p. 505.  The Texas Court of Criminal Appeals relied on the state trial court's findings of fact and conclusions of law in denying habeas relief.  *Id*., at cover.

The state trial court on collateral review found that the State's failure to bring the receipt itself to trial did not deny petitioner his right to present a complete defense, as the toxicology evidence in the record was sufficient for the jury to have concluded that the decedent was intoxicated at the time of the offense.  Petitioner disagrees with the trial court's conclusion of law, but his disagreement is insufficient to meet his burden of proof under AEDPA.  In light of its review of the entire state court record, the Court finds no basis under AEDPA for setting aside the state court's denial of habeas relief on this claim.

The state court denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of these claims.

## VII.   ACTUAL INNOCENCE

Petitioner claims that he is actually innocent because he received ineffective assistance of counsel at trial and the State lied to the jury.  The state trial court denied petitioner's claim because it failed to state a proper claim for habeas relief, *citing Schlup v. Delo*, 513 U.S. 298 (1995).  *Ex parte Henricks*, p. 505.  Moreover, the trial court rejected petitioner's claims of ineffective trial counsel and perjured testimony.  As to the latter claim, the trial court made the following conclusion of law:

75

> 4.  The applicant has not alleged or proven that the State knowingly used false testimony to convict him.  Rossi's testimony was proper expert witness opinion testimony, and as such, the applicant has not suffered a deprivation of due process.

*Id.*, p. 505 (citation omitted).  Thus, the assertions underlying petitioner's "actual innocence" argument are without merit.

To the extent petitioner is attempting to raise a "stand alone" claim of actual innocence, his allegations fail to state a cognizable federal habeas claim.  The Supreme Court does not recognize a stand alone actual innocence claim.  *McQuiggin v. Perkins*, __ U.S. ____, 133 S. Ct. 1924 (2013).

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

## VIII.   INSUFFICIENCY OF THE EVIDENCE

Petitioner contends that the evidence is insufficient to prove murder because petitioner acted in self defense and had no specific intent to cause the death of decedent.  In denying relief on these claims, the state trial court made the following relevant conclusions:

> 2.  Any challenges to the legal sufficiency of the evidence are not cognizable in an application for a writ of habeas corpus.  As the applicant attacks the sufficiency of the evidence in Ground for Relief 22, that ground for relief should be dismissed.

3.   The applicant has not established that he is actually innocent due to his acting in self-defense.  Furthermore, as this argument is an attack on the sufficiency of the evidence, it should be dismissed.

*Ex parte Henricks*, pp. 505 (citations omitted).  The Texas Court of Criminal Appeals expressly relied on the state trial court's findings and conclusions in denying habeas relief. *Id*., at cover.

Respondent correctly argues that the issue of insufficiency of the evidence was not raised on direct appeal, cannot be raised on state habeas, and is procedurally defaulted at this juncture.  *See Ex parte Grigsby*, 137 S.W.3d 673 (Tex. Crim. App. 2004). To overcome the procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To the extent petitioner argues as "cause" the ineffective assistance of appellate counsel in failing to raise the issue, the Court rejects this argument, *infra*. Petitioner presents no other grounds for cause that merit relief, and the record does not support any conclusion that failure to consider the claim will result in a fundamental miscarriage of justice.

Even assuming the claim were not procedurally barred from consideration, petitioner fails to show that the evidence is insufficient to support his conviction.  The jury rejected his self defense argument, and it is not this Court's role to re-evaluate the jury's decision.  Under section 2254, habeas relief on a claim of insufficient evidence is appropriate only if it is

found that upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979) "[A] federal habeas corpus court faced with a record . . . that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. Further, petitioner's argument that he lacked "specific intent to kill" the deceased was rejected by the jury and is refuted by evidence that petitioner shot the deceased in the head at close range. The Court has independently reviewed the record and finds that the evidence would be sufficient under *Jackson* to support the conviction, and petitioner would not be entitled to habeas relief under his claim of insufficient evidence.

## IX.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469

U.S. at 394.  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Evitts*, 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.

Petitioner contends here that appellate counsel was ineffective in failing to challenge the sufficiency of the evidence and the effectiveness of trial counsel.  In his affidavit submitted to the trial court on collateral review, appellate counsel, Clinard Hanby, testified as follows:

> I did not raise ineffective assistance of counsel because the record on direct appeal was not adequate to evaluate that issue and raising the issue at that point might have weakened the defendant's chances in a later habeas corpus proceeding.  To prevail on an ineffective assistance of counsel point, the appellant must satisfy a two-part test.  First, the appellant must show that trial counsel's performance was deficient.  Secondly, the appellant must show that the deficient performance affected the outcome.  There is a strong presumption that 'counsel's actions fell within the wide range of reasonable and professional assistance.'

> The Court of Criminal Appeals has often stated that ineffective assistance of counsel is not normally a viable issue on direct appeal.  In all but a very few cases where there is no imaginable trial strategy under which trial counsel's actions make sense, a successful ineffective assistance of counsel point requires trial counsel's explanations of his strategy decisions – answers to questions, such as those the Court has directed to trial counsel in the present case.  As a result, 'rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation [of ineffective assistance of counsel].'  Raising ineffective assistance on direct appeal is not only unlikely to be successful but can also be a disservice to the client.  Ineffective assistance can be raised in a habeas corpus proceeding.  Raising particular claims of ineffective assistance on

79

direct appeal can have a res judicata effect and limit the client's ability to raise
those claims later.

The present case was not one of the rare instances where an ineffective
assistance of counsel claim could be 'fairly evaluate[d]' from the record on
direct appeal.  The overwhelming majority of the allegations of ineffective
assistance in this case, *e.g.*, whether counsel did or did not visit the scene, did
[or] did not interview certain witnesses, *etc.*, are not matters that can be
determined from the trial record. In addition, it would not be possible to show
that failure to investigate affected the outcome of the trial without a record of
what the investigation would have revealed.  The trial record does contain a
few instances of possibly ineffective assistance, such as failure to object to
evidence of post-arrest silence and failure to state technically proper objections
to Detective Rogers' testimony about what Jerald Crow said.  There is,
however, *imaginable* trial strategies involving a failure to object, *e.g.*, trying
to make it appear to the jury that the client has nothing to hide by making as
few objections as possible and limiting objections that were made to things the
jury has probably heard of.  As a result, trial counsel's explanation of the trial
strategy would have been needed to present these issues on appeal. The record
does not contain that information.

*Ex parte Henricks*, pp. 481–83 (citations omitted, emphasis in original).

In discussing his reasons for not challenging the sufficiency of the evidence on direct
appeal, appellate counsel testified in his affidavit as follows:

I did not raise a sufficiency of the evidence point because, after reviewing the
record under the appropriate 'standard of review,' I judged that there was
absolutely no chance of reversal on that issue.  I also judged that even raising
sufficiency of the evidence would have inevitably underscored the strength of
the State's case to the Court of Appeals and made it more difficult for the other
points raised on appeal to survive harmless error analysis.

\*     \*     \*     \*

The elements of murder are that the defendant (1) 'intentionally or knowingly,'
(2) 'causes,' and (3) 'the death of an individual.'  None of these elements was
in any serious dispute or even contested at trial.  The defendant admitted to
Mr. Srack that he shot the deceased in the head.  An intent to kill can be

inferred by the jury from the use of a deadly weapon.  The pathologist testified that the gunshot wound to the head was the primary cause of death.

The only real issue at trial was self-defense or defense of a third person.  The test is whether 'the use of deadly force was reasonably believed [by the defendant] to be immediately necessary to protect the defendant [or the third person] against [the deceased's] use or attempted use of unlawful deadly force.'  When the evidence in the light most favorable to the prosecution, as required on appeal, there was ample evidence in the record for the jury to reject defendant's self-defense claim.  In the first place, the record did not even require the jury to believe that the deceased had used or attempted to use 'unlawful deadly force.'  It was the jury's prerogative to discount the self-serving portions of the defendant's statement to Mr. Srack.  There were injuries to the defendant, but these injuries were comparatively minor.  This left a question for the jury whether any use of force by the deceased was *deadly* force.  The 'tire tool' that the defendant told Mr. Srack that the deceased wielded had been wiped clean.  A jury may consider evidence of an attempt to destroy evidence as a circumstance against the defendant.

If the jury's prerogative to disregard the evidence indicating that the deceased used unlawful deadly force had been the only problem with a sufficiency of the evidence point, I might have raised the issue.  There were other, seemingly unsurmountable, problems.  There was also ample evidence for the jury to find both that the use of deadly force against the decedent was not 'immediately necessary' and that the defendant did not reasonably so believe.  There was expert testimony that the decease[d] was actually shot in the head from a distance of less than one foot while lying on the ground.  Viewing the record in the light most favorable to the prosecution required accepting this testimony as true unless there was some *Daubert/Kelly* ground for challenging the reliability of the expert's conclusions.  I could not find any such ground in this record.  Raising an issue of the sufficiency of the evidence would have required either attempting to hide this testimony from the Court of Appeals or engaging in misrepresentations of the record.

The autopsy showed that the deceased was shot four times, once in the head, twice in the abdomen, and once in the leg.  The autopsy also showed numerous cuts, abrasions, and bruises to the head, face, neck, hands, and legs.  The weapon used by the defendant holds six bullets.  When recovered by the detectives, the weapon contained four fired casings and two unfired live rounds.  The evidence indicated that the defendant fired at least five rounds.

81

The detectives recovered two spent bullets from the floor of the residence, one in the kitchen and one in the living room, and two bullets from the body. Another bullet appeared to have gone through the window and struck another residence. In order to reload, it is necessary to remove one bullet at a time and put new bullets in. The fact that the defendant had time to reload the weapon indicated that the use of force against the deceased was not 'immediately necessary.' Raising an issue of the sufficiency of the evidence would also have required either attempting to hide this testimony from the Court of Appeals or engaging in further misrepresentations of the record.

The defendant hid the pistol on a vacant lot across the street. The defendant attempted to hide the body in a forest, bury it, and cover it with brush. Fleeing the scene and attempting to hide the evidence is strong evidence of guilt. This evidence would also have been very difficult to overcome in challenging the sufficiency of the evidence [on] appeal.

I was also concerned that raising a sufficiency of the evidence point would reduce the chance of obtaining a new trial. To obtain a new trial it is generally necessary to convince the Court of Appeals *both* that the trial court committed error *and* that the error affected the outcome of the trial. Based on my experience, overcoming the harmless error rule is often the most difficult task on appeal. Raising sufficiency of the evidence would have required the Court of Appeals to study the evidence in detail and, I feared, would make the Court less likely to be convinced hat the possible errors that I had identified affected the jury verdict.

*Id.*, pp. 483–87 (citations omitted, emphasis in original).

In denying habeas relief, the state trial court made the following relevant findings on

collateral review:

6.      The Court is familiar with the effective performance of the applicant's attorneys, who have long practiced in the courts of Montgomery County and are qualified for appointment as counsel in serious felony cases.

\*      \*      \*      \*

23.      Hanby did not argue ineffective assistance of trial counsel or sufficiency of the evidence on direct appeal because he did not believe either of those issues

82

were likely to succeed and might prejudice the applicant's chances of prevailing on appeal.

The trial court further made the following relevant conclusions of law:

24.     The applicant failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel.  He failed to prove that counsel's actions were not the result of sound strategy, or that the result of the appeal would have been materially different absent his counsel's decisions.

25.     Hanby was not ineffective for failing to raise ineffective assistance of trial counsel on direct appeal, as the record was not properly developed.

26.     Hanby was not ineffective for failing to raise sufficiency of the evidence on direct appeal, as the record was not properly developed.

27.     Hanby was not ineffective for failing to raise sufficiency of the evidence on direct appeal.  He exercised sound professional judgment in presenting issues to the Court of Appeals.

*Ex parte Henricks*, p. 503–04, 509 (citations omitted).  The Texas Court of Criminal Appeals expressly relied on these findings and conclusions in denying habeas relief.  *Id*., at cover.

The Court has reviewed the record and finds no fault with the trial court's findings of fact and conclusions of law as to appellate counsel's effective assistance in this case. Petitioner fails to establish that appellate counsel's decisions were not reasonable appellate strategy, and fails to show that, but for appellate counsel's decisions not to raise ineffective assistance of trial counsel or challenge the sufficiency of the evidence, there is a reasonable probability that the result of the appeal would have been different.  Petitioner's conclusory assertions and unsupported arguments are insufficient to meet his burden of proof under AEDPA and *Strickland*, and provide him no grounds for habeas relief.  *See United States v.*

83

*Kinder*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

The state court denied relief on these claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

## X.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 13) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**. A certificate of appeal ability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 19th day of March, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE